ROGERS, J.
 

 Plaintiff appeals from a judgment rejecting its demand for the recovery of the amount of an alleged overcharge’ for freight.
 

 The record shows that in October, 1919, plaintiff shipped certain motor trucks, trailers, and parts from Wichita Palls, Tex., to the city of New Orleans, to be thence transported to Barcelona, Spain. Upon the arrival of the goods in New Orleans, arrangements for their shipment on board the steamship Margari were made between the forwarding agent of plaintiff and the representatives of the defendant company, acting as the agent of said steamship. Subsequently, a formal contract of affreightment was prepared in the office of the defendant and sent to the office of plaintiff’s agent, who accepted, and acted upon it. Thirty-four days later the bill of lading, embodying the freight charges as set forth in the contract, was prepared in the office of plaintiff’s representative and sent to defendant’s office, where it was signed and redelivered to plaintiff’s agent. The freight charges were paid, and the goods were placed on board the steamship in question and eventually carried to their destination. Upon the sailing of the vessel, which was not a regular liner, defendant settled its accounts with the owners. It was not until some time after this that plaintiff complained of the alleged error in the freight rates. Defendant, then, had no funds in its possession for the account of- the vessel or its owners.
 

 No' charge of fraud is involved in the case. Plaintiff merely seeks to hold defendant liable because of an alleged mistake in the freight charges.
 

 Defendant denies liability on the grounds that the freight money was paid in accordance with the terms of the bill of lading and prior shipping contract, and that parol testimony is inadmissible to vary or add to the documents; that it- acted only as an agent in the transaction, and, having disclosed the name of the ship, it is not responsible for the return of any overcharges, whether due or not due by the owners of the vessel; and that, if any error occurred, it is- imputable to plaintiff
 
 *995
 
 and its agent'as much, if not more so, than to the defendant. These contentions appear to be ■well founded.
 

 The mutual obligations of the parties must be governed by the written contract of affreightment and the bill of lading, which was accepted by plaintiff and its agent without objection. As is shown in Delaware v. Oregon Iron Co., 14 Wall. (81 U. S.) 579, 20 L. Ed. 779, a bill of lading is twofold in its character. It is a receipt as to the quantity and description of the goods shipped and a contract to transport and deliver the goods to the consignee or other person therein designated upon the terms specified in the instrument. And the Supreme Court of the United States held in that case that, in so far as a bill of lading is a receipt, it may be contradicted by parol testimony, but, so far as it is an evidence of a contract between the parties, it stands on the footing of other written contracts, and cannot be contradicted nor varied by parol evidence.
 

 In the instant case the contract between the parties is complete in itself. No complaint is made as to the quantity and description ^of the goods therein set forth. The complaint is directed against the terms specified in the contract by virtue of which defendant’s principal undertook to transport the goods to their destination. Under the doctrine announced in the cited ease, it is not permissible to consider parol testimony which might serve to vary the contract in that particular.
 

 The evidence is clear that defendant acted merely as an agent in the transaction. Plaintiff contends that defendant is nevertheless bound, since it failed to disclose its principal. The contract of affreightment was between plaintiff and the steamship Margari. On behalf of the steamship, defendant signed, “Kerr Steamship Co., Inc., Agents.” The bill of lading also constituted a contract between plaintiff and the steamship. The instrument was signed by defendant, as agent, on behalf of the vessel and her master. This is the usual manner and form in which such contracts are executed. In view of these facts, we think the rule formulated by Mr. Mechem in his work on Agency (2d Ed.) § 1412, is appropriate to the issue here, viz.:
 

 “The identity of the principal may be disclosed by description as well as by name as where the agent made a contract ‘for the owners’ of a ship named, and the agent may sufficiently exclude personal responsibility by expressly stating that the contract is made for and on account of his principal, although the principal is not directly named.”
 

 In the case of Waddell v. Mordecai, 3 Hill (S. C.) 22, defendant as agent of the brig Encomium contracted with plaintiff to transport a number of slaves from Charleston to New Orleans, received $100, and signed his name to a receipt therefor “for the owner.” On the voyage, the vessel was wrecked, and the slaves never reached their destination. In the suit to recover the $100, which the agent had paid over to his principal, the court discharged the defendant from liability. The rule of law announced was, as shown by the syllabus, that,
 

 “An agent must so disclose his principal at the time of the contract as to enable the opposite party to have recourse to the principal, in ease the agent had authority to bind him; but it is not necessary that the agent should name every one of a class or company of his principals, who are usually designated by some brief descriptive term; such a designation as ‘the owners of the brig Encomium’ would be sufficient to exonerate the agent, at least until he is called on for a more precise specification, and refuses to give it.”
 

 Maury v. Ranger, 38 La. Ann. 485, 58 Am. Rep. 197, presented an issue similar to the one involved here. In that ease defendants executed bills of lading to plaintiffs for 2,709 bales of cotton to be received on board the
 
 *997
 
 steamer Gracia. As the result of a quarantine established by the state authorities, the vessel was not permitted to come to New Orleans, and defendants, with the knowledge and consent of plaintiffs, shipped the cotton to Liverpool by the steamer Chancellor, owned by other parties. The freight rates were higher on the Chancellor than on the Gracia, and plaintiff sued for the difference and for the damage done to the cotton while in transit. This court dismissed the suit, holding that the contract of affreightment contained on its face the fact of the agency, and disclosed by its terms the principal for whom it was executed, and that therefore no personal liability attached to the agent.
 

 Moreover, this is not a case where the carrier has taken advantage of the shipper with regard to the rate to be charged. Plaintiff’s agent was regularly engaged in the freight forwarding business in the city of New Orleans, and he was in a position to know, and probably did know, as much as defendant about the rates established by the Shipping Board. Plaintiff’s representative retained in his office for a period of thirty-four days the contract of affreightment and actually used it as the basis for preparing the bill of lading which was presented to the defendant for its signature. He was thus in a position to discover the so-called mistake in the freight charges, but he neglected to do so. He not only made no complaint at the time, but actually perpetuated the error. The freight money was voluntarily paid to, and received by, defendant for its principal. The vessel was allowed to sail, and the defendant was permitted to make a full settlement of its account with its principal without notice of plaintiff’s claim. In these circumstances, we fail to see any equity in plaintiff’s demand.
 

 For the reasons assigned, the judgment appealed from is affirmed at plaintiff’s cost.