HIGGINS and another *v.* McCREA.

*(Circuit Court, N. D. Ohio, E. D. 1885.)*

CHICAGO BOARD OF TRADE—RULE 26, § 6—CROSS-ACTION—CONTRACTS.
   The cancellation by a broker of original contracts, without the substitution of others, as provided for by rule 26 of the Chicago board of trade, and without the previous knowledge or consent, or subsequent ratification, of the party for whom he is acting, will not be binding on such party, and he will be entitled to recover the "margin" advanced by him to the broker on the original contracts in a cross-action, in an action by the broker for the amount expended by him on such contracts.

At Law.

This case was tried to a jury at the April term, 1885, of above-named court, Hon. JOHN BAXTER, circuit judge, and Hon. MARTIN WELKER, district judge, presiding.

The plaintiffs claimed that they had expended, for and at defendant's request, $31,644.31, for which they demanded a judgment. The evidence adduced in support of this claim showed that the plaintiffs were commission merchants and brokers, residing and doing business in the city of Chicago, and members of the Chicago board of trade; that the defendant authorized and requested them, in May, 1883, to buy large quantities of pork and lard for his account, to be delivered during the month of August, 1883. Pursuant to said order of defendant, the plaintiffs entered into several contracts in their firm name with other brokers, and members of said board of trade, for, and on defendant's account and risk, for August delivery, 3,000 barrels of pork and 2,000 tierces of lard, and duly notified him thereof. These contracts were made under the rules prescribed by the said board of trade. The evidence tended to show that the defendant was familiar with these rules, and tacitly consented to be bound by them.

The plaintiffs appeared as witnesses on the trial of the case and produced their books and exhibits, and it appeared, by their admis-

sions as such witnesses, that soon after the consummation of said contracts—to-wit, in the latter part of May and early in June following—the plaintiffs, in adjusting profits realized and losses sustained in other transactions in which they were personally liable, canceled said original contracts of purchase, made for defendant, and released the contracting parties from all further liability thereunder. They did this by what they termed "set-off" contracts. They claimed the right to do this under the sixth section of rule 26 of said Chicago board of trade, which rule is as follows:

### "RULE XXVI.

"Sec. 6. In case any member of the association, acting as a commission merchant, shall have made purchases or sales by order and for account of another, whether the party for whom any such purchase or sale was made shall be a member of the board of trade or otherwise, and it shall subsequently appear that such trades may be offset and settled by other trades made by said commission merchant, he shall be deemed authorized to make such offset and settlement, and to substitute some other person or persons for the one from or to whom he may have purchased or sold the property originally: provided, that in case of such substitution the member or firm making the same shall be held to guaranty to his or their principal the ultimate fulfillment of all contracts made for account of such principal which have been so transferred, and shall be held liable to said principal for all damages or loss resulting from such substitution."

On cross-examination the plaintiffs conceded that at the time of canceling said contracts they did not then, or at any time thereafter, *specifically* substitute any other party or parties in place of the original parties with whom they had contracted for defendant's account; nor did they notify the defendant of said cancellation and alleged substitution of other parties. And, on being asked who they considered bound to the defendant after such cancellations, for the deliveries contracted to be made, answered that they (the plaintiffs) only were so bound. They claimed, in explanation, that they had contracts for August delivery of pork and lard in quantities sufficient to enable them to make good the amounts agreed to be delivered to the defendant, and that they had in fact received from other parties the amount of pork and lard bought for defendant's account, and tendered the same to him pursuant to the terms of the original contracts, which he declined to receive and pay for. The plaintiffs further conceded that their books did not show what contracts took the place of those originally made for defendant, and which they afterwards canceled. The defendant had, at plaintiffs' repeated requests, advanced them on these contracts $19,897 to indemnify them against loss. These advances were called "margins." When the defendant declined on August 1st to accept and pay for the pork and lard tendered by plaintiffs, they sold the same in the usual way on defendant's account at a loss, in excess of the "margins" advanced, of $31,644.31, the sum claimed in their petition.

The defendant pleaded that said contracts were gambling trans-

actions,—bets on the future prices of pork and lard,—that no actual delivery of those articles was contemplated; and that said transactions were contrary to public policy and illegal under the laws of Illinois; and again, for a second defense, that plaintiffs canceled said original contracts, without specifically substituting others, and, without his knowledge or consent, sold and disposed of the property for their own use and benefit; and that at no time after June 16, 1883, did the plaintiffs hold any contracts whatever for defendant's account. Defendant filed a counter-claim, and asked a judgment for the sums advanced by him as margins, viz., $19,897, with interest, etc.

*C. C. Bonney* and *F. J. Wing*, for plaintiffs.

*S. Burke* and *W. B. Sanders*, for defendant.

The court, through Judge BAXTER, after disposing of the defense that said transactions were of a gambling character, in directions as to the law, to which no exceptions were taken by either party, proceeded to further instruct the jury as to the other defense, substantially as follows, to-wit:

"If you shall, under the instructions heretofore given, find that the contracts in question were made for legitimate purposes, and were therefore valid, you may, for the purposes of this case, assume that the the sixth section of the twenty-sixth rule of the Chicago board of trade, read in evidence in this case, authorized the plaintiffs to cancel the contracts first made for defendant's account, and substitute other and like contracts with other parties in lieu thereof, and that the defendant understood its force and effect, and consented to be governed thereby in his transactions with plaintiffs; and still the plaintiffs will not be entitled to recover in this action, because they did not, in fact, substitute other contracts with other parties, as required by the said rule, in such manner as that the defendant could enforce them, or proceed against the vendors therein for damages in a case of a failure to comply therewith.

"The cancellation of the original contracts in the manner conceded in the testimony, that is to say, without the specific substitution of other contracts, and without the previous knowledge or consent of the defendant, or his subsequent ratification, absolves him from all liability thereunder, and entitles him to recover back from the plaintiffs the amounts advanced as 'margins,' with interest thereon from the respective payments."

Under these instructions, the jury found in favor of the defendant upon the causes of action set forth in plaintiffs' petition, and against the plaintiffs upon the counter-claim set up in the answer, in the sum of $22,062.42.

A motion for a new trial has been filed, but has not yet been disposed of.