### AMERICAN COTTON MILLS v. MONIER et al.

#### No. 3358.

Circuit Court of Appeals, Fourth Circuit.

Nov. 28, 1932.

S. J. Durham, of Gastonia, N. C., for appellant.

John D. Shaw, of Charlotte, N. C. (Whitlock, Dockery & Shaw, of Charlotte, N. C., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and PAUL, District Judge.

SOPER, Circuit Judge.

R. H. Hooper & Co., a copartnership composed of citizens of New Jersey and Texas, trading as cotton brokers on the New York Cotton Exchange, brought this action as plaintiffs in the District Court against the American Cotton Mills, a North Carolina corporation, as defendant, to recover the sum of $4,331.72 with interest representing a balance claimed by the brokers to be due them from the corporation on certain transactions for the purchase of cotton for future delivery. On April 15 and 16, 1930, the brokers were instructed by the corporation to purchase for its account certain lots of cotton in the aggregate amount of 900 bales for delivery in the months of July, October, and December. The aggregate purchase price was $68,405. The corporation paid on account on June 13, 1930, $5,500 under a running agreement between the parties, whereby the brokers gave a credit to the corporation of $5,000, subject, however, to mutual margin calls when the balance, either way reached the amount of $5,000. On June 18, 1930, the contracts were closed out on the Exchange at a price which left the balance for which the suit was brought. The District Judge, at the conclusion of the evidence, directed a verdict for the plaintiff; and the appeal questions the correctness of this decision.

The controversy turns on the propriety of the action in closing out the contracts on June 18, 1930, at the loss indicated. The purchases had been made in accordance with the instructions of the corporation; and each transaction had been confirmed in writing by the brokers, showing the amount of the purchase and the price, but, as was the custom of the business, omitting the name of the seller. Each notice of confirmation also contained the statement that the transaction had been made subject to the rules and regulations of the New York Cotton Exchange. The parties had dealt with each other in the same manner for three preceding years, and it is not disputed that the written confirmations constituted evidence of the contracts between them. The rules and regulations of the Exchange provided in substance that a member, who should find himself unable to meet his obligations with other members at maturity, should immediately communicate this fact to the Exchange by letter addressed to the secretary, by whom it should be immediately read from the rostrum and posted upon the bulletin of the Exchange. It was further provided that, upon such happening, any contract for the future delivery of cotton with the failed member should be closed in the open market without unnecessary delay (and not later than six business hours after the posting) by the other party thereto; and that, if the contract should be one in which the failed member was the buyer, the other party to the contract should sell an amount of spot cotton equal to that called for in the contract. On June 18, 1930, the brokers in this case, finding themselves temporarily unable to meet their obligations, by reason of losses suffered through the dishonesty of an employee, communicated this fact to the Exchange, in accordance with the rule, and also promptly notified all of their customers, including the defendant corporation, of the situation, giving them an opportunity to protect their contracts if they saw fit. The corporation took no action, and their contracts were liquidated on the same day.

The defense is that the relationship of customer and broker, or principal and agent, did not exist between the parties, but that the contract was one of sale in which the brokers were the sellers and the corporation was the buyer of the cotton; and that the sellers, in disregard of the promise to extend credit to the amount of $5,000, wrongfully called for additional margin when only $4,331.72 was due, and closed out the transaction, without authority, by selling the cotton. This conduct, it is said, was a breach of contract, and, instead of giving rise to a debt due to the brokers from the corporation, entitled the latter to receive back the sum of $5,500 which it had paid on account of the purchase price. While it is admitted that the corporation gave the orders to the brokers to buy the cotton for its own account, it is nevertheless urged that the brokers became liable as sellers of the cotton because they did

not report to the customer the name of the persons from whom they had purchased. It is contended that the brokers therefore come within the rule of contract law that a person, acting as agent for another, is personally answerable if, at the time of making the contract in his principal's behalf, he fails to disclose the fact of his agency. It is also said that, since the plaintiffs were brokers, they were in a sense agents for both parties, under an obligation to make full disclosure to both. As to the rules of the Cotton Exchange, it is argued that, although they were mentioned in the written confirmations, they were not intended to affect, and did not in fact affect, the relationship or form part of the contract between the parties; but they operated solely between the brokers and other members of the Exchange.

The undisputed facts do not lead to the conclusion that the plaintiffs were not acting as brokers in the transactions involved in this case. They had orders to buy for the account of the corporation. They reported that they had done so, and there is no evidence to the contrary. They had no interest in the purchases except as agents of the corporation, and their omission to report the names of the sellers did not alter the nature of the relationship between the parties. Nor was it affected by the fact that, in executing the orders, the brokers assumed the position of principals towards the sellers with whom they dealt. Wilhite v. Houston (C. C. A.) 200 F. 390. The present controversy does not arise between the purchaser of the goods and the unknown sellers. It relates to the contract of agency between the brokers and the corporation in which the contracting parties were known to each other; and the doctrine of undisclosed principal has no relevancy.

It is, of course, the duty of a broker to give his client the fullest information concerning the material facts of the transaction for which he is engaged; and the interests of the client furnish the criterion of what information is so material that it should be communicated. A failure to perform this duty will constitute a breach of contract and may not only render the broker liable for such damages as his principal may have sustained, but will also destroy the broker's right to compensation. Veasey v. Carson, 177 Mass. 117, 58 N. E. 177, 53 L. R. A. 241, Wilkinson v. McCullough, 196 Pa. 205, 46 A. 357, 79 Am. St. Rep. 702. But we do not find

in the case at bar the slightest suggestion that the corporation had any desire to know, or that its interests were in the least affected by the identity of the sellers of the cotton. No question is raised as to the price agreed to be paid or the ability or willingness of the sellers to deliver; and so it is obvious that the corporation would have gained nothing if it had known who were the other parties to the contracts for future delivery.

An examination of the references in the notices of confirmation to the rules of the Cotton Exchange, and of the rules themselves, does not reveal that they were intended to apply only to transactions between members, and not to dealings between customers and brokers. The contracts, as evidenced by the notices, expressly stated that the transaction had been undertaken subject to the rules and regulations of the New York Cotton Exchange, and the rules expressly direct that, when a member finds himself unable to meet his obligations with other members at maturity, the Exchange shall be notified, and contracts for the future delivery of cotton shall be closed in the open market within six business hours. The obligations between members of the Exchange clearly include obligations undertaken on behalf of clients. The courts give effect to such regulations when they are made a part of contracts between clients and members of an Exchange. Bibb v. Allen, 149 U. S. 481, 489, 13 S. Ct. 950, 37 L. Ed. 817; Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183; Gettys v. Newburger (C. C. A.) 272 F. 209, 215; Leviten v. Bickley, Mandeville & Wimple (C. C. A.) 35 F.(2d) 825. The corporation in this instance entered into the contracts for the future delivery of cotton with full knowledge that they were made subject to the rules, and it agreed in effect to be bound thereby. There was always the possibility that the transactions might be closed out prematurely if the brokers should unfortunately become involved in business difficulties; and, since that very contingency occurred, it became the obligation of the customer to complete the purchases at the price then prevailing. Had there been some departure from the course laid down in the rules, a right of action against the broker might have arisen as in Higgins v. McCrea (C. C.) 23 F. 782; but the rules were fully complied with as contemplated in the contracts.

The action of the District Judge in directing a verdict for the plaintiff was fully justified, and the judgment is affirmed.