### DUPONT et al. v. UNITED STATES.
### No. 356.

Circuit Court of Appeals, Second Circuit.
June 1, 1936.

952

Irving Mariash, of New York City (I. Maurice Wormser, of New York City, on the brief), for appellants.

Lamar Hardy, U. S. Atty., of New York City (Edward J. Ennis, Asst. U. S. Atty., and Helen E. Cottrell, Sp. Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The plaintiffs are a firm of cotton brokers who trade on the New York Cotton Exchange. On behalf of certain customers they had purchased 24,000 bales of cotton for future delivery. On March 23, 1934, they were instructed by these customers to transfer their accounts to another firm of brokers. The plaintiffs carried out these instructions by delivering a "sold" memorandum to the other broker, who, in turn delivered a "bought" memorandum to the plaintiffs. No commission was charged the plaintiffs' customers because their instructions to remove the accounts had been given at the plaintiffs' request. The documents exchanged were in the form invariably used in every purchase and sale of cotton for future delivery between members of the Exchange. Upon this transaction the plaintiffs paid stamp taxes of $729.40, for which they immediately filed a claim for refund. The commissioner of Internal Revenue rejected it, and this action followed.

By the statute (Revenue Act 1926, § 800, Schedule A(4), 44 Stat. 99, 101, 102), a stamp tax is imposed upon "each sale, agreement of sale, or agreement to sell (not including so-called transferred or scratch sales) * * * at, or under the rules or usages of, any exchange * * * for future delivery." The plaintiffs contend: (1) That the statute contemplates a document evidencing a "real sale" and not a mere change of brokers for the same customer; and (2) that the transaction in question is expressly excepted as a "transferred or scratch sale." Rejecting these contentions, the District Court held the

transaction taxable, and upon the pleadings and supporting affidavits gave summary judgment dismissing the complaint.

Although the purpose of the transaction was to transfer a customer's account from one brokerage firm to another, the mechanics of doing this involved a contract of sale for future delivery made by the plaintiffs with the substitute broker. Ordinarily, it is true, one who acts as an agent does not become personally bound on a contract which he makes for a disclosed principal; but if he fails to divulge the name of his principal, he does become a party to the contract. American Law Inst. Restatement of Agency, §§ 320–322. When a broker deals in futures on the New York Cotton Exchange, he is personally liable as principal, whether or not he discloses the identity of his customer, for section 33 of the by-laws of the Exchange provides that no contract for future delivery shall be recognized or enforced by the Exchange "unless both parties thereto shall be members of the New York Cotton Exchange." It also specifies the form of contract to be used. This by-law is intended to, and does, force the brokers to assume the obligations of principals to each other. See Wilhite v. Houston, 200 F. 390, 392 (C.C.A.8); Mullinix v. Hubbard, 6 F.(2d) 109, 110 (C.C.A.8); American Cotton Mills v. Monier, 61 F. (2d) 852, 854 (C.C.A.4). Nor is the broker's liability as a principal on his contracts to buy or sell in any wise affected by his right to recover indemnity from his customer as in the cases last cited. See, also, Whitehead v. Izod, L.R. 2 C.P. 228; Ulster County Sav. Inst. v. Fourth Nat. Bank, 54 Hun, 638, 8 N.Y.S. 162, 165, 166. The contention that the broker has merely the status of a del credere agent is wholly groundless. Such an agent guarantees to the principal performance of the purchaser's contract. See American Law Inst. Restatement of Agency, § 424d. In case of a broker, the reverse is true; that is, the right of indemnity runs from the principal to the agent. If the facts at bar be analyzed with the foregoing principles in mind, it is apparent that what happened was this: The plaintiffs had incurred personal liability on contracts to purchase cotton to be delivered in the future; when instructed to "transfer" the accounts to another broker, they made a contract with the substituted broker to sell an equal amount of cotton to him. The result was not to release the plaintiffs from their original contracts to buy; no one could do that but the original sellers; and there was no novation, for the new broker assumed no contract relations with them. Hence the plaintiffs still remained obligated to receive delivery from the original sellers but had protected themselves in respect to this liability by obtaining the obligation of the substituted broker to receive delivery of a like amount of cotton from them. Protection of this character could be had only by making a sale to the new broker; it was obviously a sale in substance as well as in form. Statements to the contrary in the affidavits are merely expressions of opinion by the affiants and are erroneous conclusions of law. Arguendo the plaintiffs' contention that the statute taxes only instruments evidencing an actual transaction may be admitted. But the result of reversal does not follow, for the plaintiffs' agreement to sell to the substituted broker was an actual transaction. To call it a transfer of the plaintiffs' contracts to buy is a misnomer resulting from an inaccurate analysis of the legal relations as above explained. No contract to buy was assigned; no title to specific cotton was transferred, and the new broker's contract did not require delivery by the plaintiffs of the same cotton they had contracted to accept from the original sellers; any other cotton of the specified description would satisfy the contract as well. The conclusion must be that the plaintiffs made an agreement to sell to the new broker upon which they must pay a stamp tax unless it comes within the statutory exception of "so-called transferred or scratch sales."

This phrase has been defined in articles 44(a) and 125(3)(c) of Treasury Regulations 71. The definition requires that the purchase and sale be made at the same exchange, on the same day, at the same price, and for the account of the same person. The plaintiffs' sale to the substituted broker was made on March 23, 1934; the purchases for the plaintiffs' customers had been made prior to that date. Since the purchases and sales were not made on the same day, the transaction in question was not within the exception.

The judgment is affirmed.