215 F.2d 740
 CLEARY BROTHERS, as Owner of THE SCOW CLEARY NO. 78, Libellant,
v.
CHRISTIE SCOW CORPORATION, Respondent-Appellant-Appellee, and
American President Lines, Ltd., Impleaded Respondent-Appellee, and George R. Tollefsen and Margaret Tollefsen, a partnership, doing business in the name of Tollefsen Brothers, Impleaded Respondents, and Grand Wrecking and Lumber Corp., a Corporation, Impleaded Respondent, and United States of America, Impleaded Respondent-Appellant-Appellee.
 No. 23085.
 United States Court of Appeals Second Circuit.
 Argued May 14, 1954.
 Decided September 16, 1954.
 
 John J. McElhinny, New York City, argued for Cleary Bros.
 Leavenworth Colby, Sp. Asst. to the Atty. Gen. (Warren E. Burger, Asst. Atty. Gen., Leonard P. Moore, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., and Russell Chapin, Atty., Dept. of Justice, Washington, D. C., of counsel), for the United States and American President Lines, Ltd.
 Alexander & Ash, New York City (Sidney A. Schwartz, New York City, of counsel), for Christie Scow Corporation.
 Before CHASE, Chief Judge, and HINCKS and HARLAN, Circuit Judges.
 HINCKS, Circuit Judge.
 
 
 1
 This appeal arises from a suit in admiralty brought by the libellant, Cleary Brothers (hereinafter called Cleary) to recover damages sustained by its wooden scow, The Cleary Bros. No. 78. The libellant charged that the damage was caused while the ship was under charter to the Christie Scow Corporation, defendant herein (hereinafter called Christie).
 
 
 2
 The pertinent facts of the case are as follows: Cleary chartered its scow to Christie for an indefinite period under terms requiring that the scow be returned to its owner in the same condition as received, ordinary wear and tear excepted. On May 28, 1946, Christie, under terms similar to those in the charter between it and the libellant, subchartered the scow to American President Lines, Ltd. (hereinafter called American). The scow was used to carry dunnage on board the S.S. Barnard Victory, which was then located at Pier 9, Jersey City, to the Grand Wrecking and Lumber Company (hereinafter called Grand) in Brooklyn, New York. Tollefsen Brothers loaded the dunnage on the scow and it then proceeded to its destination in Brooklyn where its cargo was unloaded by Grand. On June 4, 1946, the unloading was completed, and upon receiving information that the Scow was light, Christie arranged to have it towed to Weehawken, New Jersey, where it was ultimately returned to the libellant.
 
 
 3
 Three of the libellant's allegations are conceded by all the parties involved in the action: (1) The scow was in good condition at the time it was chartered to Christie. (2) The scow was damaged during the period of the subcharter agreement, some time between May 31, 1946, and June 4, 1946. (3) The damage was caused by a force other than ordinary wear and tear.
 
 
 4
 Cleary Brothers commenced its libel against Christie on February 17, 1948, in the United States District Court for the Eastern District of New York. The libellant claimed two thousand five hundred dollars in damages. Christie answered and impleaded American. American denied that it had damaged the scow and contended that it could not be held liable since it was acting as a General Agent of the United States Maritime Commission in procuring the subcharter from Christie. American also impleaded Tollefsen Brothers. On November 30, 1951, Christie filed a petition to implead the United States in which it charged breach of contract and negligence by the United States causing the damage to the scow which Cleary complained of. The United States objected to the petition impleading it on the ground that it was not timely. It was urged that the exclusive remedy in the case was that provided under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., which has a two year statute of limitations. Judge Rayfiel, in a separate opinion, D.C., 103 F.Supp. 155, held that the libel stated a case of ordinary bailment and that therefore the Tucker Act, 28 U.S.C. §§ 1346(a), 2401, which has a six year statute of limitations, was applicable. Judge Rayfiel also held that, even if the Tucker Act were inapplicable, the petition to implead the United States was timely under an Act of Congress extending the two year statute of limitations of the Suits in Admiralty Act in certain defined situations. 46 U.S.C.A. § 745. The United States in turn impleaded Grand.
 
 
 5
 Early in the trial the petition impleading Tollefsen Brothers was dismissed. The Court, after a finding of no negligence, dismissed the petition impleading Grand.
 
 
 6
 The trial judge found that during the period of the subcharter agreement, American was acting as a General Agent of the United States Maritime Commission, and hence as an agent of the United States. The trial court also found that Christie knew that American was acting pursuant to such agency. Based on this finding, the petition impleading American was dismissed, and the United States, upon interlocutory decree, was held primarily liable to Cleary. Christie was held secondarily liable for the damage caused to the scow and solely liable for interest and costs not recoverable from the United States. Both the United States and Christie bring this appeal.
 
 
 7
 We think that the crucial issue in this case is whether Christie, at the time when it entered the subcharter agreement,[1] knew that American was acting as an agent of the United States. If the record bears out the trial judge's ruling on this point, then the dismissal of the petition impleading American, under the doctrine of Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, was proper. We think, however, that the ruling that there was "substantial evidence" pointing to such knowledge on the part of Christie was not supported by the record. We are unable to find any evidence in the record which supports this contention. Mr. Lynch, the Vice President of Christie, who was the officer that represented Christie in this transaction, testified on cross examination that he did not know, at the time of the subcharter agreement, of the agency relationship between American and the United States and this testimony was not contradicted by any other witness. At the trial and on appeal there was effort to show that certain stamps, required to be placed on bills presented for payment to the War Shipping Administration, were enough to put the defendant on notice of the agency. The trial court itself put little, if any reliance on the stamps, since on their face they failed to indicate that the United States was the principal in the transaction. Moreover, the witness Lynch, unequivocally denied that the stamps indicated to him the true position of American. Other documents were also introduced which, though suggesting that the United States was the principal, came to the attention of the defendant at a time subsequent to the formation and final statement of the subcharter agreement. It may be that the trial judge was reluctant to give much credibility to Mr. Lynch's testimony. But even if he completely disbelieved this witness, there still would be an absence of any evidence to support his ruling. On appeal it was argued that certain government publications were enough to put Christie on constructive notice. It is not necessary for us to decide whether Christie, absent proof of actual knowledge of the content of the publications, was bound thereby. For even if Christie was so bound, the publications, even considered in connection with facts shown to have been known to Christie at the time the scow was chartered for the United States, were not enough to show knowledge of American's agency at that time.
 
 
 8
 The charter and subcharter agreements create contractual relations between the parties. In such a case, where the principal is not otherwise known to the third party, it is the duty of the agent to make a disclosure. Christie, as the third party to the contract, was not required to make any independent investigation of this matter. If the agent breaches this duty, he becomes a party to the contract and is personally liable for damages arising out of the transaction. The case of Horan v. Hughes, D.C., 129 F. 248, affirmed by us at 129 F. 1005, involved a suit in admiralty where the defense was the same as the one asserted in the instant case. The trial court, in speaking of the agent, stated that, "To maintain such a defense, he must prove that he disclosed the name of his principal. It is not sufficient that he was acting as agent, or that the other party to the contract supposed he was acting as agent, if he did not know who the principal was." Judge Swan, in Dupont v. United States, 2 Cir., 83 F.2d 951, 953, affirmed 300 U.S. 150, 57 S.Ct. 391, 81 L.Ed. 570, declared the principle clearly as follows: "Ordinarily, it is true, one who acts as an agent does not become personally bound on a contract which he makes for a disclosed principal; but if he fails to divulge the name of his principal, he does become a party to the contract. American Law Inst. Restatement of Agency, §§ 320-322."
 
 
 9
 The agent must disclose his principal at or before the time when the contractual agreement is made final. Judge Augustus N. Hand, in Propstra v. Dyer, 2 Cir., 189 F.2d 810, 812, remarked that, "It appears settled that, in the absence of some custom or agreement of the parties to the contrary, an agent is liable in a contract that is closed before the name of the principal is revealed to the other contracting party for the latter is assumed to have relied on the agent's credit in making the agreement."
 
 
 10
 Finding no evidence that Christie knew that American was acting as an agent of the United States, we hold that the decree dismissing as to American was "clearly erroneous" within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C. It follows that the decree as to Christie and the United States, as well as American, must be reversed. And since no further findings are required, the reversal will be accompanied with a direction for a decree holding American primarily, and Christie secondarily, liable to Cleary for full damages, interest and costs.
 
 
 11
 The disposition thus indicated makes it unnecessary for us to reach the questions raised as to the timeliness of the petition impleading the United States.
 
 
 12
 Reversed with directions.
 
 
 
 Notes:
 
 
 [1]
 Here, as elsewhere, in this opinion, emphasis unless otherwise indicated is supplied