**INSTITUTO CUBANO DE ESTABILIZA-CION DEL AZUCAR, Libelant,**

v.

**THE SS THEOTOKOS, her engines, etc. and Transocean Oil Corporation and Transworld Marine Transport Corporation, Respondents.**

United States District Court
S. D. New York.
Oct. 24, 1957.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for libelant John J. Leibell, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for respondents. Walter P. Hickey, New York City, of counsel.

DAWSON, District Judge.

This case involves the question of law as to whether a person who signs a charter party as "agent for the owner of the ship" is liable on the charter party as agent for an undisclosed principal by reason of the fact that the owner of the ship was not named in the charter party.

The case comes up as a result of a motion which was made in the action to direct the respondent Transworld Marine Transport Corporation to proceed to arbitration pursuant to the provisions of a charter party which provides for arbitration of disputes.

On April 24, 1953, libelant instituted an action against the SS Theotokos, Transocean Oil Corporation and Transworld Marine Transport Corporation, to recover damages for shortages in cargoes allegedly shipped by the libelant and carried by the vessel and the respondents under a charter party dated March 8, 1952. The charter party had in it a provision for the arbitration of disputes.

On May 24, 1954, before either respondent had answered, libelant served a written demand for arbitration on each of the respondents. Respondent Transocean designated its arbitrator but respondent Transworld refused to arbitrate on the ground that it executed the charter party as agent for Transocean, the owner of the vessel, and hence was "not a party to the charter party and was not bound by the arbitration provision contained therein." After hearing argument on the motion and considering the papers submitted thereon, I decided that the making of the arbitration agreement was at issue as far as Transworld was concerned and directed a trial of that issue. 153 F.Supp. 85. The trial has now been had.

The Court finds the following facts:

On March 4, 1952, libelant authorized Dietz, Inc. of New York, shipping brokers, to arrange for charters on libelant's behalf to carry cargoes of molasses from Cuba to ports of the United States. Dietz, Inc. canvassed the market to secure charters. In addition, as a part of its business, it maintained a "position sheet" which contained information for its brokers as to the availability of vessels for chartering and various other data, including ownership of vessels. A representative of Dietz, Inc. telephoned the Vice-President of respondent Transworld, and the representative of Transworld offered the steamship Theotokos for charter. After some brief negotiations the principal terms of the charter were agreed upon and Dietz, Inc. proceeded to consummate the contract by preparing a written charter party. The charter party, which bore the date of March 8, 1952, was sent by a representative of Dietz, Inc. to the Vice-President of Transworld for signature. When transmitted it was made out as between "Transworld Marine Transport Corp., owner of the good Liberian Steam Tank Vessel named 'Theotokos' * * * and Instituto Cubano de Estabilizacion del Azucar." Before it was signed, however, the representative of Transworld inserted after the words "Transworld Marine Transport Corp." the words "As Agents for Owners" and also inserted the same phrase after the place where the signature appeared. As executed, therefore, the charter party was one between "Transworld Marine Transport Corp., As Agents for Owners of the good Liberian Steam Tank Vessel named 'Theotokos' * * * and Instituto Cubano de Estabilizacion del Azucar." In this form it was signed by the Vice-President of Transworld and then returned to Dietz, Inc. who forwarded it for signature to the charterer. The proof was clear that the vessel Theotokos was not owned by Transworld Marine Transport Corporation but was owned by respondent Transocean Oil Corporation; that the weekly issue of Lloyd's Shipping Index of March 3, 1952 carried the vessel under the name Theotokos and showed the name of her owner as Interocean Transport Corp. The name of this corporation was changed to Transocean Oil Corporation, effective March 31, 1952.

We have, therefore, a situation where the charter party was entered into by Transworld as agent for the owners of the ship, but without identifying on the document the name of the owners. It is undisputed that Transworld was not the owner and that the owner was a corporation now known as Transocean Oil Corporation, which has consented to the arbitration and apparently is ready to proceed with it. Libelant, however, urges that Transocean Oil Corporation has been dissolved and the ship has been scrapped, and in an endeavor to secure a financially responsible party seeks to hold Transworld on the charter party on the ground that it signed as agent for an undisclosed principal, and that it is,

therefore, personally liable on the charter party.

Certainly the documentary evidence is undisputed that at the time libelant signed the charter party it knew that it was dealing with Transworld, as agent for the owner of the ship, and not with Transworld as the owner of the ship. There is no proof that libelant knew the name of the owner of the ship; on the other hand there is no evidence that there was any attempt to hide or disguise the name of the owner of the ship, and the name of the owner of the ship could have been learned very easily by those means used in the maritime industry, such as Lloyd's Shipping Index, or through the Deputy Commissioner of Maritime Affairs of Liberia at his office in New York City. Furthermore, there is no evidence that the libelant was seeking to secure a commitment by anyone other than the owner of the ship or sought more than to bind the ship by the charter party.

### Discussion

Libelant urges that it is the duty of an agent, acting for a third party, to disclose the name of the principal, and that if the agent fails to do this he becomes a party to the contract and is personally liable for damages arising out of the contract. There is certainly language in some of the cases which would indicate that this is a requirement of the law of agency.[1] However, cases which so hold are doing no more than stating that unless the principal's name is disclosed the identity of the principal is not disclosed. Whether this is so would depend upon the facts of the particular case.

In the Restatement of the Law of Agency, § 4, a "disclosed principal" is defined as follows:

"(1) If, at the time of the transaction conducted by the agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity, the principal is disclosed.

"(2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is partially disclosed.

"(3) If the other party has not notice that the agent is acting for a principal, the principal is undisclosed."

It is well established that a person purporting to make a contract with another, as agent for a disclosed principal, does not become a party to the contract. Restatement of the Law of Agency, § 320. The question in this case, therefore, is whether the principal was disclosed by identifying the principal as the owner of the ship without giving the name of the owner. Nowhere does the law specifically require that the name of the principal must be disclosed; rather, it requires that the "identity" of the principal must be disclosed. If the identity can be disclosed by description, as well as by name, then undoubtedly there was disclosure of the identity of the principal in the present case. 1 Mecham, Agency, § 1412 (2d ed. 1914). "The identity of the principal may be disclosed by description as well as by name, as where the agent made a contract 'for the owners' of a ship named." Thus, in the Restatement of the Law of Agency, § 4(e), it is stated:

"Whether a principal is a disclosed principal or a partially disclosed principal depends upon whether or not the third party has sufficient information or other notice as to his identity. This is a question of degree. If the manifestation of the principal or agent to the third person, or the information the third person has, is such that he is able to or should be able to distinguish

---

1. Cleary Bros. v. Christie Scow Corp., 2 Cir., 1954, 215 F.2d 740; Cobb v. Knapp, 71 N.Y. 348 (1877); Dupont v. United States, 2 Cir., 1936, 83 F.2d 951, affirmed 300 U.S. 150, 57 S.Ct. 391, 81 L. Ed. 570.

the principal from all others, or he otherwise has notice of the principal's identity, the principal is disclosed. If the manifestation is ambiguous and the third person has no reason to know which of two or more principals the agent is representing, the principal is partially disclosed. If the manifestation is ambiguous and the third person is reasonably mistaken as to the person for whom the agent acts, there is no contract with the principal."

A similar interpretation of what constitutes a sufficient disclosure of the identity of the principal is found in 1 Williston, Contracts, § 288 (Rev. ed. 1936), where it is stated that

"As different rules of law are applicable when the agent discloses his principal and when he does not, the question of what is a sufficient disclosure of the principal is an important one. It has been said that the duty is on the agent to make the disclosure, not upon the person with whom he is dealing to discover it. Therefore, it is not sufficient to relieve the agent from personal liability that the person with whom he dealt had means of knowing that the agent was acting as such. But, on the other hand, the general principles governing the formation of contracts require the conclusion that if the agent gave such information that a reasonable person in the light of the surrounding circumstances would have understood that the agent was acting for a principal indicated, though not named, the contract is with the principal and not with the agent."

In this case there was no ambiguity about the language of the charter party itself. It was quite clear that Transworld executed the instrument as agent and the principal was identified and described as the owner of the vessel.

■■ In maritime contracts such description is sufficient to identify the principal for whom the agent is acting. See Hudson Trading Co. v. Hasler & Co., Inc., D.C.S.D.N.Y.1926, 11 F.2d 666, 667, wherein the court said:

"It seems to me that the test, particularly in a maritime case, is not whether a principal is named, but rather whether a principal is identified. * * *

"To say that 'Hasler & Co., Inc.' are acting 'as agents for owners of the steamship Lake Forney, of Portsmouth, N.H., * * *' identifies the principal beyond peradventure."

Thus where a bill of lading showing the name of the vessel was signed by Kerr Steamship Co., Inc., Agents, the court held that there was sufficient identity of the principal. Wichita Falls Motor Co. v. Kerr S.S. Co., 1926, 160 La. 992, 107 So. 777, 778. See also Strachan Shipping Co. v. Alexander Eccles Co., 5 Cir., 1928, 25 F.2d 361.

The Court concludes that the charter party is an agreement between libelant and the steamship Theotokos and Transocean Oil Corporation, and directs that the arbitration proceed between those parties. The Court concludes that Transworld Marine Transport Corporation is not a party to the charter party nor bound to arbitrate under the provisions thereof.

Transworld's argument that libelant has waived any right to arbitrate with it by filing the libel is a point which it is not necessary for the Court to consider. Transocean has not objected to the arbitration and, in fact, has named its arbitrator; and since the Court has found that Transworld is not bound by any provision of the charter party to submit to arbitration, it becomes unnecessary to consider whether the filing of the libel waived the right to arbitration.

This opinion shall constitute the findings of fact, conclusions of law and order of the Court.