**VALKENBURG, K.-G., Libellant, Appellant,**

v.

**THE S.S. HENRY DENNY, her engines, boilers, tackle, etc., Irish & Continental Shipping Co., Ltd., Kerr Steamship Co., Inc. and Redereij H. Pinkster, Respondents-Appellees.**

**No. 13390.**

United States Court of Appeals Seventh Circuit.

Oct. 24, 1961.

---

Paul H. Heineke, William F. Andersen, Heineke, Conklin & Schrader, Chicago, Ill., for appellant.

Harvey Wienke, Robert D. Barnes, McBride, Baker, Wienke & Schlosser, Chicago, Ill., for respondents-appellees, Irish & Continental Shipping Co., Ltd. and Redereij H. Pinkster.

Joseph Keig, Jr., Bennet B. Harvey, Jr., Chicago, Ill., MacLeish, Spray, Price & Underwood, Chicago, Ill., of counsel, for appellee Kerr S. S. Co.

Before DUFFY and CASTLE, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

Libellant, Valkenburg, K.-G., filed this libel in admiralty to recover damages for the alleged breach of a contract of affreightment for the carriage of a cargo of fresh-frozen pork livers between Chicago, Illinois and Rotterdam, Netherlands. Named as respondents in the libel were the Steamship Henry Denny, Irish & Continental Shipping Co., Ltd., managers of the Denny, Redereij H. Pinkster, owner of the Denny, and Kerr Steamship Co., Inc. Hereinafter, for convenience, the corporate respondents are referred to as Irish, Pinkster and Kerr, and the ship as Denny.

Libellant is a German corporation with its office and place of business at Cologne, West Germany. Irish is an Irish national with its office and place of business at Dublin, Ireland. Pinkster is a Dutch national with its office and place of business at Stadtskanaal, Netherlands. Kerr is a Delaware corporation. From the record it appears that Kerr, alone, of the corporate respondents is doing business in Illinois.

The libel was filed in the United States District Court for the Northern District of Illinois. Libellant was unable to obtain jurisdiction over the Denny because the ship has not returned to the port of Chicago and the jurisdiction of the court since July, 1958, when the cargo was loaded. Personal service was obtained upon Kerr. In an attempt to obtain jurisdiction over Irish and Pinkster libellant caused process to be served upon the Secretary of the State of Illinois, relying upon the provisions of the Illinois Non-Resident Watercraft Operators' Act. Ill. Rev.Stat.1959, c. 110, § 263b.

Irish and Pinkster appeared specially and moved to quash service of process and dismiss the libel as to them. That motion was granted, and judgment was entered accordingly.

Kerr filed exceptive allegations to the libel praying that the libel be dismissed as to it for the reason that the libel was insufficient to state a claim or cause of action against it. Upon consideration of Kerr's exceptive allegations, the court found that Kerr acted solely as local husbandry agent for the Denny while the vessel was in the port of Chicago. Upon that finding, the libel was dismissed as to Kerr.

This appeal has been taken to review the judgment of the court quashing service upon Irish and Pinkster and dismissing the libel as to all respondents.

The cargo of pork livers, shipped by Berns & Koppstein, Inc., was loaded at Chicago aboard the Denny on or about July 1, 1958, consigned to the order of the shipper at Rotterdam, Netherlands, under a negotiable "on board" bill of lading executed by Kerr and providing for transportation of the cargo to Rotterdam under refrigeration of 15 degrees or lower. The bill of lading was assigned to libellant by the shipper prior to the arrival of the Denny at Rotterdam. Upon arrival of the vessel at Rotterdam, a substantial part of the frozen liver was found to be damaged by reason of thawing and decomposition. The precise cause of the thawing is not known, but it was alleged that the damage resulted either because the meat was in a partially thawed condition at the time of loading or because the method of stowage of the meat in the ship's refrigerator space was improper, or because of a combination of both causes.

Insofar as Kerr is concerned, libellant contends that Kerr became obligated on the bill of lading as a principal, because it failed to disclose the identity of the principal for whom it purported to act. That contention must be resolved by reference to the language of the bill of lading and the uncontroverted facts as set forth in the libel and Kerr's exceptive allegations.

The bill of lading was signed by Kerr as agent for "P. J. Janzen, Master" of the Denny. Kerr's exceptive allegations that it was neither the owner nor the operator of the Denny and that it had no control over the vessel are not challenged by libellant. The controversy arises because the name of the carrier was not given in the bill of lading, although the ship was named therein.

Unquestionably, Kerr purported to sign the bill of lading as an agent. Therefore, the decisive issue upon this phase of the appeal is the question whether there was a sufficient disclosure by Kerr of the identity of the principal for whom it acted. If there was not, libellant could successfully invoke the agency principle that an agent who executes a contract for an undisclosed principal becomes liable as a principal upon the contract, 2 Am.Jur., Agency, § 404, and enforce the bill of lading as a contract of carriage against Kerr. C.f., General Foods Corp. v. The Felipe Camarao, D.C.S.D.N.Y., 82 F.Supp. 622, affirmed 2 Cir., 172 F.2d 131.

We think there was sufficient information disclosed by Kerr upon the face of the bill of lading to disclose to a reasonable person the identity of the principal for whom Kerr acted. Where there is such disclosure, the principal only, not the agent, is bound by the contract. Instituto Cubano De Estabilizacion Del Azucar v. S.S. Theotokos, D.C.S.D.N.Y., 155 F.Supp. 945; 1 Williston on Contracts (Rev.Ed.1936), § 288.

Kerr signed the bill of lading as agent for the Master of a named vessel, the "M.V. Henry Denny." As counsel for libellant stated in oral argument, admiralty law and maritime usage accords to a ship an identity of her own to the extent that the ship herself is liable for her faults and may be sued *in rem*. The identity accorded by maritime law to a ship as a person also charges those who deal in maritime commerce with the knowledge as to the ownership and operation of a named ship which accepted maritime publications, as Lloyd's Registry of Shipping, would disclose.[1]

Kerr, in signing the bill of lading as agent for the master of a named ship, sufficiently disclosed the identity of the principal for whom it acted. Instituto Cubano De Estabilizacion Del Azucar v. S.S. Theotokos, D.C.S.D.N.Y., 155 F.

Supp. 945; Hudson Trading Co. v. Hasler & Co., D.C.S.D.N.Y., 11 F.2d 666; Wichita Falls Motor Co. v. Kerr Steamship Co., 160 La. 992, 107 So. 777. The libel was properly dismissed as to Kerr.

The remaining issues relate to the order of the court quashing the service of process and dismissing the libel as to Irish and Pinkster.

At the outset, we reject the argument of those respondents that valid process can never be served under the Illinois Act in admiralty cases because the Act provides a method of service of process which conflicts with the provision of Admiralty Rule 1, 28 U.S.C., that all process "shall be served by" a United States marshal, or deputy marshal. The Illinois Act provides that the operation of watercraft in waters of that State by a non-resident constitutes a designation by such non-resident of the Secretary of State of Illinois as his agent upon whom process may be served.[2]

In a proper case, and upon a proper finding of an implied designation of the Secretary of State as the agent of a non-resident for receipt of process, there is sufficient compliance with Admiralty Rule 1 when the marshal serves process upon that State official. Here, process for both Irish and Pinkster was served by the marshal upon the Secretary of State, and a copy of the libel was then mailed to each of those respondents as the Illinois statute required. We think the rule is no bar to that procedure if the libel is a proper case for substituted service under the provisions of the Act.

The controlling consideration for determination of the issue whether the service of process upon Irish and Pinkster was properly quashed, is the question whether the provisions of the Illinois Act are applicable to this cause. The Act provides in pertinent part:

"The use and operation by any person * * * of a watercraft in the

---

[1] It appears from the statement of facts in its brief that libellant employed Lloyd's Registry to obtain the names of

Irish and Pinkster as managers and owner, respectively, of the Denny.

[2] See footnote 3, infra.

waters of this State, shall be deemed an appointment by such person of the Secretary of State, to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property,
* * *." [3]

The statute has not been construed by the courts of Illinois.[4] The trial court relied upon an analogy drawn to the case of Brauer Machine & Supply Co. v. Parkhill Truck Co., 383 Ill. 569, 50 N.E.2d 836, 148 A.L.R. 1208, in allowing the motion to quash service. We think that analogy is an apt one.

In the Brauer case, substituted service was effected upon the Secretary of State for Parkhill under the provisions of Section 20a of the Motor Vehicle Act. Ill. Rev.Stat.1941, c. 95½, § 23, now Ill.Rev. Stat.1959, c. 95½, § 9–301. Upon Parkhill's motion, judgment was entered quashing service of summons. The Supreme Court affirmed that judgment. Inasmuch as the substituted service provisions of the Motor Vehicle Act[5] and the

Watercraft Operators Act are identical in content and placement of their provisions, except that the one refers to the use of Illinois highways and the other the use of Illinois waters, we think the rationale of Brauer controls the issue before us.

The complaint in the Brauer case alleged that Parkhill had transported equipment from the State of Oklahoma over the highways of Illinois to the plaintiff's place of business in Illinois; that while the equipment was being unloaded, an employee of plaintiff had been injured as a proximate result of the negligence of Parkhill's agent and driver; that the plaintiff's insurer had paid the employee workman's compensation on account of that injury; and that the plaintiff's insurer, as subrogee, was entitled to recover damages from Parkhill.

Parkhill was an Oklahoma corporation, not licensed to do business in Illinois. In moving to quash service of process, it relied upon the fact, shown upon the face of the complaint, that the injuries alleged had occurred during the unloading of a vehicle wholly upon the private premises

---

3. The pertinent provision of the Act is the following:
    "The use and operation by any person * * * of a watercraft in the waters of this State, shall be deemed an appointment by such person of the Secretary of State, to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property, and said use or operation.shall be signification of his agreement that any such process against him which is so served, shall be of the same legal force and validity as though served upon him personally if such person is a nonresident of this State or at the time a cause of action arises is a resident of this State but subsequently becomes a nonresident of this State. * * *." Ill.Rev.Stat.1959, c. 110, § 263b.

4. Federal court cases in which process has been served under the Illinois Act and similar statutes involved injuries or damage from accidents or collisions within the waters of a state. Frase v. Columbia Transp. Co., D.C.N.D.Ill., 158 F. Supp. 858; Franklin v. Tomlinson Fleet

Corp., D.C.N.D.Ill., 158 F.Supp. 850; Nilsson v. Cleveland Tankers, Inc., D.C. N.D.Ill., 158 F.Supp. 350; Tardiff v. Bank Line, Ltd., D.C.E.D.La., 127 F. Supp. 945; Goltzman v. Rougeot, D.C. W.D.La., 122 F.Supp. 700.

5. The substituted service provision of the Motor Vehicle Act is the following:
    "The use and operation by any person * * * of a motor vehicle or motorcycle over or upon the highways of the State of Illinois, shall be deemed an appointment by such person of the Secretary of State to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him, growing out of such use or resulting in damage or loss to person or property, and said use or operation shall be signification of his agreement that any such process against him which is so served, shall be of the same legal force and validity as though served upon him personally if such person is a non-resident of this State or at the time a cause of action arises is a resident of this State but subsequently becomes a non-resident of this State, * * * ." Ill. Rev.Stat.1959, c. 95½, § 9–301(a).

of the plaintiff and outside the boundaries of any highway of the State of Illinois.

The plaintiff contended in the Brauer case that the injury had occurred as an incident to a contract for the carriage of materials over the highways of Illinois and that, therefore, the injury had grown out of the use of the Illinois highways by the non-resident carrier. That contention was rejected. The court held that substituted service could be had under the act only in causes of action which arose directly out of the use of Illinois highways. The court said "use of the highways" was the definitive provision of the Act which limited its application, and that the phrase, "or resulting in damage or loss to person or property", could not be construed to extend the act to embrace causes of action which did not arise directly out of the use of the highways. 383 Ill. at page 581, 50 N.E.2d 836. At page 583 of 383 Ill., at page 843 of 50 N.E.2d, the court excluded actions which arose only incidentally from the use of the highways by the following language:

"The negligent act which is alleged to have caused the injury was in no way connected with the use of the highway. It, in no sense, arose or grew out of the use of the motor vehicle on the highway. The causative force which caused the injury to Lindstrom did not originate on the highway, nor can it be attributed to the use or operation of the motor vehicle on the highway. True, as between the shipper and the carrier, the unloading may have been incident to the contract for the transportation of the load over the highway. This was a matter of contract between the shipper and the carrier in which the statute was in nowise involved. It was not, however, incident to the use or operation of the vehicle on the highway."

Here the libel alleges only that the cargo of frozen livers was laden on the Denny at the port of Chicago, and that the ship then sailed for the Port of Rotterdam. There is no allegation that respondents took any action, or failed to take action, in the waters of the State of Illinois which led to the alleged damage. In addition to the allegation that the cargo was laden at the port of Chicago, the only allegations, actually inferences, of any act within Illinois are that the bill of lading was executed at Chicago and that the laden ship traversed Illinois waters enroute to Rotterdam. There is no allegation that the deterioration of the cargo upon its arrival at Rotterdam was a result of causative forces growing out of the use of the waterways of Illinois. The most that can be said for the allegations of the libel is that there is an alleged breach of a contract upon a bill of lading executed in Illinois with respect to a cargo loaded at the port of Chicago. Such incidents to the use of Illinois waters are not sufficient to bring the case within the provisions of the statute for substituted service.

█ Respondents insist that the nonresident watercraft act is a "hit and run" statute which applies only to collisions upon Illinois waters. For present purposes, it is not necessary to so narrowly construe the statute. We hold only that the execution of the bill of lading at Chicago and the loading of the cargo at Chicago pursuant thereto, and the deterioration of the cargo which was discovered when the cargo was discharged at Rotterdam, are insufficient to show damages to libellant "growing out of" the use of the waters of the State of Illinois which would bring the statutory provisions for substituted service into play. C.f., Brauer Supply Co. v. Parkhill Truck Co., 383 Ill. 569, 50 N.E.2d 836, 148 A.L.R. 1208; accord, Dart Transit Co. v. Wiggins, 1 Ill.App.2d 126, 137, 117 N.E.2d 314.

█ It is necessary to consider briefly libellant's contention that it was error to dismiss the libel as to Irish and Pinkster. Libellant contends that the cause should have remained pending against those respondents until it could be determined whether service could have been obtained by other means, or whether the cause might be transferred to another forum in which service could be obtained. There is, however, no showing that this libel

could have been filed in any other district and service of process there obtained at the time when it was filed in the Northern District of Illinois, Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, or that there is any future likelihood that libellant would be able to obtain jurisdiction over the vessel or over Irish and Pinkster in the latter District. It was a proper exercise of discretion for the District Court to dismiss the libel.

The judgment is affirmed.