D/S A/S FLINT, Libelant,

v.

SABRE SHIPPING CORPORATION, Respondent.

No. 64–A–199.

United States District Court
E. D. New York.
April 13, 1964.

Haight, Gardner, Poor & Havens, New York City, for libelant; Thomas R. H. Howarth, William G. Mead, New York City, of counsel.

Burlingham, Underwood, Barron, Wright & White, New York City, for respondent; Hervey C. Allen, Gerard Harrington, Jr., New York City, of counsel.

ZAVATT, Chief Judge.

This and two companion cases illustrate the means employed by some libelants to ensure against personal service of process upon respondents in admiralty cases, in order to embarrass them by having their property seized or their credits tied up. A simple device is employed. Instead of filing a libel in the United States District Court within which the respondent maintains its principal office, to the knowledge of the libelant, the libelant crosses the East River, files the libel in this court and prays for the issuance of process in personam with writ of foreign attachment. By this means, the three libelants caused the bank accounts of the respondent with the Manufacturers Hanover Trust Company to be tried up to the extent of $75,000 because of three purported attachments under alleged claims aggregating $55,-116.57. Motions by the respondent to vacate the three attachments were granted by memorandum opinions, each dated and entered March 30, 1964, in which the court stated that explanatory opinions would follow.

This is a suit in admiralty pursuant to 9 U.S.C. § 8 to compel arbitration. The parties entered into a charter party, dated April 18, 1961, whereby libelant chartered a certain vessel to the respondent. Clause 17 thereof provides that disputes arising thereunder shall be resolved by three arbitrators to be appointed as therein specified. In this suit, libelant claims to be entitled to $25,000 under the terms of the charter party. This claim is disputed by respondent, a domestic corporation organized and existing under the laws of the State of New York, with its office and principal place of business at 19 Rector Street, City and County of New York, within the territorial jurisdiction of the United States District Court for the Southern District of New York. The respondent maintains a bank account at the 40 Wall Street office of the Manufacturers Hanover Trust Company, within the Southern District of New York. Had the libelant filed a libel in the United States District Court for the Southern District of New York, process in personam could have been served upon the respondent in that District and no assets of the respondent could have been attached before judgment. The libelant was fully aware of the presence of respondent and of the facility with which it could have been served within the Southern District of New York. Nevertheless, libelant crossed the East River and filed a libel in this District in an attempt to reach by writ of foreign attachment assets of the respondent having a situs within the Southern District of New York. The questionable propriety of this procedure is compounded by what must be a matter of common knowledge among those in the shipping industry, i. e., that the respondent loads and unloads vessels, which it owns or charters, at its terminal at Pier 20, Staten Island, New York, within this District. Respondent's name is painted in large letters over the entrance to and on the roof of this pier. Its listing in the Manhattan telephone directory includes not only its office at 19 Rector Street, New York, New York, but also its pier in Staten Island. Advertisements and listings in trade journals and directories proclaim Pier 20 as the place where respondent loads and discharges cargo.

Libelant filed its libel in this court on February 25, 1964 and prayed therein that process with a writ of foreign attachment issue. A deputy marshal of this court made no attempt to find the respondent in this District. Rather, he treated the process as one directed to

the garnishees therein named (the Brooklyn branches of four banks) and served a copy thereof upon each of these banks at their Brooklyn branches as though they were respondents. He made the following return:

"I hereby certify, that on the 27th day of February 1964, in my district, I personally served the within Process in Personam with Clause of Foreign Attachment upon the within named Manufacturers Hanover Trust Co., 177 Montague Street, Brooklyn, N. Y. by leaving a copy thereof at their above place of business with William D. Smith Ass't Sec."

It would appear that such procedure, however regrettable, is not unique to this District. See Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De Vapores, 158 F.Supp. 107 (S.D.N.Y. 1957).

The history of the writ of foreign attachment reveals that it has always been auxiliary to process in personam and designed to compel the appearance of a party to a suit. Its history was summarized by the Supreme Court in Manro v. Almeida, 10 Wheat. 473, 23 U.S. 473, 6 L.Ed. 369 (1825) and in Atkins v. Fiber Disintegrating Co., 18 Wall. 272, 85 U.S. 272, 21 L.Ed. 841 (1874). In Almeida, supra, the Supreme Court reaffirmed the basic purpose of this writ as it had existed under English law, i. e., "that where a defendant has concealed himself, or absconded from the kingdom, this process may issue." Manro v. Almeida, supra, 10 Wheat. at 492, 23 U.S. at 492, 6 L.Ed. at 373. Although it recognized that an "incidental" purpose of such process is to obtain security for the libelant's claim, the Court found it "very clear that the primary object of the attachment is to obtain an appearance." 10 Wheat. at 493–494, 23 U.S. at 493–494, 6 L.Ed. at 374.

It has been held, consistently, that "[t]he proper object for the libellant to seek * * * by means of a foreign attachment (is) * * * to compel the appearance of * * * the respondent,

to the suit instituted against him," and that, to this end, the attachment is "auxiliary to a capias or monition to the debtor, and subserves only the end which an arrest or appearance of the defendant by stipulation answered." Smith v. Miln, 22 Fed.Cas. 603, 605 (S.D.N.Y.1848). Modern authorities, as well as the traditional commentators on the admiralty law, share this view. In Smith v. Miln, supra, the court cites Clerke's Praxis, "the earliest historical record of admiralty practice," as speaking of

"attachments of property by warrant in admiralty, as an ordinary usage of the court, in case a debtor is concealed or absconded, and in case his goods are held by others, in order to compel his appearance in court, and also to appropriate his effects to the satisfaction of his debts. The primary purpose of the warrant was to enforce the personal appearance of the party * * *." 22 Fed. Cas. at 606.

Attachment was the "easy and salutary remedy" recognized by Browne in his treatise on the Civil and Admiralty Law which was provided by the "ancient proceedings of the admiralty court" when it was found that "a person against whom a warrant had issued cannot be found, or that he lives in a foreign country." Atkins v. Fiber Disintegrating Co., supra, 18 Wall. at 303, 85 U.S. at 303, 21 L.Ed. 844 (1874). Throughout all this time, the purpose of the foreign attachment has been twofold:

"to obtain jurisdiction of the respondent in personam through his property and to the extent of his property; and to obtain security. These two purposes cannot be separated. An attachment for jurisdictional purposes also results in the obtaining of security, and security cannot be obtained except as an adjunct to obtaining jurisdiction." 2 Benedict, Admiralty, § 288 at 346 (6th ed. 1940).

Prior to Almeida, supra, process in personam was issued first. If the respondent could not be found it was then

necessary to obtain a writ of foreign attachment. Dunlap's, Admiralty, 139–141 (1836). If the respondent was found and served but failed to appear, a writ of foreign attachment could also be obtained from the court "for contumacy after monition." II Conkling, Admiralty Practice 137–138 (2d ed. 1857); Manro v. Almeida, supra, 10 Wheat. at 496, 23 U.S. at 496, 6 L.Ed. at 374. The writ of foreign attachment issued neither as of course nor in the first instance, but only after an order of the court because of the respondent's contumacy or the inability of the Marshal to find him.

 It was not until Almeida, supra, that the Supreme Court held that the writ of foreign attachment could issue simultaneously with the monition. But this approved procedure was held to require an express order of the Court. Following Almeida, supra, Admiralty Rule 2 was promulgated. It codified the well established practice that an attachment under the writ of foreign attachment may be made only when the respondent cannot be found and codified the decision of the Supreme Court that the writ may issue simultaneously with the monition. Rule 2, however, eliminated the need of an express order of the court for the issuance of the writ. The writ may now be incorporated with the monition and be issued as a matter of course:

"Rule 2. Suits in personam—process in—arrest in same

"In suits in personam the mesne process shall be by a simple monition in the nature of a summons to appear and answer to the suit, or by a simple warrant of arrest of the person of the respondent in the nature of a capias, as the libellant may, in his libel or information pray for or elect; in either case with a clause therein to attach his goods and chattels, or credits and effects in the hands of the garnishees named in the libel to the amount sued for, if said respondent shall not be found within the district. But no warrant of arrest of the person of the respondent shall issue unless by special order of the court, on proof of the propriety thereof by affidavit or otherwise."

The procedural refinement effected by Admiralty Rule 2, however, does not mean that property may be attached in every action in which process in personam with a writ of foreign attachment is issued. As a condition precedent to such attachment it must first be determined that the "respondent shall not be found within the district." While the Marshal need not devote his time to a fruitless search for the respondent, 2 Benedict, Admiralty, § 289 at 349 (6th ed. 1940), it is clear "that the Marshal has no right to attach goods, chattels, etc., before endeavoring to find the party himself." The Valmar, 38 F.Supp. 615, 617 (E.D.Pa.1941). See also, Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De Vapores, supra; Birdsall v. Germain Co., 227 F. 953 (S.D. N.Y.1915); Shewan v. Hallenbeck, 150 F. 231 (S.D.N.Y.1906); International Grain Ceiling Co. v. Dill, 13 Fed.Cas. 70 (S.D.N.Y.1878); Cushing v. Laird, 6 Fed.Cas. 1017 (S.D.N.Y.1870).

Having determined that the Marshal made no attempt whatever to find. and serve the respondent within this District, the court must now consider whether such an attempt, if made with reasonable diligence, would have met with success. Federazione Italiana Dei Consorzi Agrari v. Mandask Compania De Vapores, supra. Admiralty Rule 2 does not define "found." It is discussed in United States v. Cia. Naviera Continental S.A., 178 F. Supp. 561, 563–564 (S.D.N.Y.1959):

"The Rule does not define 'found'. The term has a different significance depending upon whether the respondent is a resident or nonresident. In the case of a foreign respondent, such as we deal with here, whether or not it can be found within the district presents a two-pronged inquiry: first, whether it can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process.

"The first inquiry is directed to whether or not the respondent is present within the district by reason of activities on its behalf by authorized agents so as to subject it to this Court's jurisdiction in in personam proceedings. * * *

The second question, (the only one arising in the instance of a resident respondent), then presents itself. Could the respondent be found within the district with due diligence for service in the libel proceeding?"

Accord, Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963). Although the respondent is a domestic corporation, it is a nonresident of this District, insofar as its principal place of business is within the Southern District of New York. The respondent's activities within this District, however, are such as to render it present for jurisdictional purposes. In addition to loading and unloading cargo at Pier 20, within this District, the respondent maintains the bulk of its records at Pier 20, including vouchers, records of is Operations Department, its Traffic Department and other departments. In addition, the respondent's Claims Manager maintains an office at Pier 20 and divides his time between that office and the respondent's main office. While it is true that the actual loading and unloading of vessels under the control of the respondent is accomplished by an independent contractor, this fact cannot negate the frequency and degree of the respondent's activities within this District. There is no evidence before the court to negate the probability that the Claims Manager was at Pier 20 on February 27, 1964, the date when the Marshal served the process in personam with writ of foreign attachment upon the Brooklyn branch of the Manufacturers Hanover Trust Company or that he was at Pier 20 on a date shortly thereafter.

In order to consider the very interesting question as to whether the respondent was present within this District for service of process, it will be assumed arguendo that the respondent could not be served within the District. Nevertheless, was the respondent within reach of the process of this court? Although this question has yet to be decided squarely, Judge Weinfeld recognized the problem in United States v. Cia. Naviera Continental, S.A., supra:

"Originally district courts could not issue process for service beyond the limits of the district. Robertson v. Railroad Labor Board, 1925, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119. Rule 4(f) of the Federal Rules of Civil Procedure changed the law to the extent of permitting service 'anywhere within the territorial limits of the state in which the district court is held.' Hence, a question may arise whether once a respondent is found within the district where the action is pending in a jurisdictional sense, it may also be found therein for process purposes if with due diligence it can be served in another district within the state as permitted by Rule 4(f). Courts of admiralty have not been hesitant to overcome procedural hurdles in order to achieve substantial justice. * * * However, the conjectured issue does not arise herein since Ocean maintains its offices within the district where the action is pending." 178 F.Supp. at 564 n. 7.

In the instant case, this question is more than a "conjectured issue"; it is a critical issue.

It is crystal clear that the historical purpose of the writ of foreign attachment is to compel the respondent's appearance. Although an incidental purpose thereof is to supply the libelant with security, this objective can only be obtained as an adjunct to jurisdiction. It is equally clear that the libelant in the instant case "adopted this method to embarrass the respondent or get security from him for their claim without first having secured a judgment." Shewan v. Hallenbeck, supra, 150 F. at 232–233. Prior to the promulgation of Rule 4(f) of the Rules of Civil Procedure this court held that it was permissible for a libelant to do what

the libelant has done in this case. Cavanaugh v. Starbuck Towing Corp., 261 F. 656 (E.D.N.Y.1919); Shamrock Towing Co. v. Manufacturers' & Merchants' Lighterage Co., 262 F. 844 (E.D.N.Y. 1918). It is the opinion of this court, nevertheless, that this is no longer so. The Admiralty Rules do not specify how process shall be served. They specify only who may serve process:

"Rule 1. Process on filing libel

"No mesne process shall issue from the District Court in any civil cause of admiralty and maritime jurisdiction until the libel, or libel of information, shall have been filed in the clerk's office from which such process is to issue. All process shall be served by the marshal or by his deputy, or, where he or they are interested, by some discreet and disinterested person appointed by the court."

Notwithstanding Rule 81(a) (1), the courts have held that the methods of service prescribed by the Federal Rules of Civil Procedure are substantially the same as the admiralty practice. Thus, it has been held that, in an admiralty suit, a corporation may be served by service upon its managerial or general agent, a method of service authorized by Rule 4(d) (3) of the Federal Rules of Civil Procedure. Seawind Compania, S.A. v. Crescent Line, Inc., supra; United States v. Cia. Naviera Continental, S.A., supra; Ashcraft-Wilkinson Co. v. Compania De Navegacion Geamar, S.R.L., 117 F.Supp. 162 (S.D.N.Y.1953). It has also been held that the admiralty practice is substantially similar to that under Rule 4 (c) (d) (e) (f) of the Federal Rules of Civil Procedure. Patel Cotton Co. v. Steel Traveler, 107 F.Supp. 191 (S.D. N.Y.1952). In Valkenburg, K.-G. v. The S.S. Henry Denny, 295 F.2d 330 (7th Cir. 1961), it was held that service of process upon the Secretary of State, as agent of a foreign corporation for receipt of process, pursuant to a state's statute, was a sufficient compliance with Admiralty Rules 1 and 2. Accord, Paige v. Shinnihon Kishen, 206 F.Supp. 871 (E.D.La.

1962). This method of service is authorized by Rule 4(d) (7) of the Federal Rules of Civil Procedure. See also, 2 Benedict, Admiralty, § 280 at 336 (6th ed. 1940).

No valid reason appears why the principle established by Rule 4(f), permitting service of the process of a United States District Court anywhere within the state in which that court is situated, is not equally applicable to proceedings in admiralty. No valid reason appears why the process of this court in an admiralty suit should not run as far as its process in suits generally. The respondent is present in this District for jurisdictional purposes. It is within reach of the process of this court; it could have been served with process by service upon an officer or agent of the respondent corporation, possibly within this District but certainly in the Southern District of New York within the State of New York. Rule 4(d) (3) and (f) of the Rules of Civil Procedure. Had the respondent been so served it would have been compelled to appear and the historical purpose of Admiralty Rule 2 would have been satisfied without this abusive attachment.

There is an additional reason why the attachment herein has been vacated. The respondent does not have a bank account at the Brooklyn branch of Manufacturers Hanover Trust Company, 177 Montague Street, Brooklyn, New York, but, rather, at the 40 Wall Street, New York, New York, office of that bank. It is the opinion of this court that the credits claimed to have been attached do not have a situs within this District.

The propriety and effect of the purported attachment in this case is governed by the law of New York State. Rule 64 Federal Rules of Civil Procedure; United States v. First National City Bank, 321 F.2d 14 (2d Cir. 1963). The decisions of the New York courts on this question are reviewed in United States v. First National City Bank, supra. Most of the cases deal with the relationship between a foreign bank and one of

its branches within the State of New York. A warrant of attachment levied upon such a branch bank in the State of New York does not reach assets held for, or accounts maintained by the foreign bank outside the State of New York. Cronan v. Schilling, 100 N.Y.S.2d 474 (Sup.Ct.1950). The rationale of this line of cases, though stated in decisions involving New York branches of foreign banks, would appear to apply with equal force to branches of New York banks:

> "Unless each branch of a bank is treated as a separate entity for attachment purposes, no branch could safely pay a check drawn by its depositor without checking with all other branches and the main office to make sure that no warrant of attachment had been served upon any of them. Each time a warrant of attachment is served upon one branch, every other branch and the main office would have to be notified. This would place an intolerable burden upon banking and commerce, particularly where the branches are numerous, as is often the case." Cronan v. Schilling, supra, 100 N.Y.S.2d at 476.

The same rules and the same rationale have been applied to instances where a warrant of attachment has been served upon a New York branch of a New York bank. In Chrzanowska v. Corn Exchange Bank, 173 App.Div. 285, 291, 159 N.Y.S. 385, 388 (1st Dep't 1916), aff'd, 225 N.Y. 728, 122 N.E. 877 (1919), the court held that a branch bank is not required to honor a check drawn by a depositor, who maintains his account at the main office of the bank. For purposes of honoring such checks "the different branches were as separate and distinct from one another as from any other bank. The Legislature did not intend, we think, either to authorize or require a bank having branches to cash checks and make loans to a depositor at any branch at which

he may see fit to call, for to do so would produce endless confusion * * *." In United States v. First National City Bank, supra, the United States attempted to attach the credits of an alleged delinquent taxpayer in the Montevideo branch of the First National City Bank of New York by serving a warrant of attachment upon the home office of the First National City Bank of New York situated in New York, New York. The court held that the nature of the depositor's right against the bank, arising out of a deposit in the Montevideo branch, is to be determined by the law of New York State. It declined to follow the argument of the Government that the situs of the indebtedness of the bank to the depositor was irrelevant. Only if the depositor could sue a bank in New York to recover this deposit in the Montevideo branch could the Government reach that deposit by serving a warrant of attachment upon the home office of the bank in New York. The court held that the obligation of the bank to the depositor, arising out of the deposit in the Montevideo branch, did not have a situs in New York State. It reviewed the decisions of the New York courts on the question of branch banks and cited Chrzanowska v. Corn Exchange Bank, supra, as establishing the proposition that "domestic branches within the same city were to be regarded as distinct and separate entities and that deposits made in branch banks are payable there and only there." It would appear, therefore, that the Court of Appeals of this Circuit has, in effect, overruled Konstantinidis v. The S.S. Tarsus, 196 F.Supp. 433 (E.D.N.Y.1961), in which the court sustained a warrant of attachment upon facts substantially similar to those in the instant case.

It is for these reasons that this court granted the three motions of the respondent to vacate the three attachments of the credits of the respondent with the Manufacturers Hanover Trust Company.