TRANSCO EXPLORATION COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5628-88.     Filed October 2, 1990.

*Emily A. Parker, Carla A. Howard,* and *Dennis J. Grindinger,* for the petitioner.

*John F. Eiman* and *Jeffrey N. Kelm,* for the respondent.

OPINION

GOFFE, *Judge:* The Commissioner determined a deficiency of $789,567.97 in petitioner's windfall profit tax under section 4986[1] for the taxable year 1980. In an amendment to answer, respondent increased petitioner's deficiency by $55,493.85, based on an alternative argument.

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

The issue is whether petitioner properly calculated the net income upon which its net income limitation (also referred to as NIL) was applied. Specifically, we must decide whether petitioner, in computing "taxable income from the property" under section 4988(b)(3)(A), may exclude part of the lease bonuses it paid but then capitalize the same portion of lease bonuses as part of its basis upon which the "as if" cost depletion allowance is computed under section 4988(b)(3)(C).

Petitioner is a Delaware corporation with its principal place of business in Texas. It is engaged in oil and gas exploration and production, both offshore in the Gulf of Mexico, and onshore in the Gulf Coast and Rocky Mountain areas. Petitioner is an "independent producer" for windfall profit tax purposes within the meaning of section 4992(b)(1).

Petitioner leased eight properties from the U.S. Government for the purpose of oil and gas exploration and production. Only these leases are involved in this controversy. In exchange for the granting of the lease on each of these properties, petitioner paid lease bonuses to the U.S. Government. A lease bonus is an amount paid to a lessor for entering into a mineral lease in addition to the royalty for the hydrocarbons extracted. R. Westin, Taxation of Natural Resources: Oil, Gas, Minerals, and Timber 14 (1987).

---

[1]Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable year 1980, and Rule numbers refer to the Rules of Practice and Procedure of this Court.

Petitioner was not required to file quarterly windfall profit tax returns, Form 720, with respect to its share of oil from the eight properties because the windfall profit tax was subject to withholding by the first purchaser of oil. Sec. 4995(a)(1)(A). During 1980, the first purchasers withheld $9,426,968.80 from petitioner's share of the oil produced from these leases and paid that amount to the Internal Revenue Service. After applying the NIL, petitioner claimed an overpayment of windfall profit tax in the amount of $2,830,535.79 with respect to these leases. It did, however, pay windfall profit tax on the income from these leases in the amount of $6,596,433.01. Petitioner offset its total overpayment of windfall profit tax against its Federal income tax liability as allowed in section 51.6402-1, Excise Tax Regs.

The Commissioner issued a statutory notice of deficiency in which he determined a deficiency in petitioner's windfall profit tax in the amount of $789,567.97. He determined that petitioner, in calculating the NIL under section 4988 for the taxable year 1980, "included payments totaling $10,123,428.00 for lease bonuses in [petitioner's] basis for the properties listed * * * for the purpose of computing the 'as if' cost depletion deduction under I.R.C. 4988(b)(3)(C) and excluded the same lease bonus payments from gross income [from the property] in determining taxable income from the property under I.R.C. 4988(b)(3)(A) resulting in an improper double tax benefit." The Commissioner further determined that the lease bonuses should be excluded from the properties' cost bases for the purpose of computing "as if" cost depletion, or, in the alternative, the lease bonuses should not be excluded in determining taxable income from the properties.

In his amendment to answer, respondent proposed that, if we conclude that petitioner must exclude the lease bonuses from taxable income from the properties, then petitioner is not entitled to include the lease bonuses in its depletable basis for the "as if" cost depletion computation. Such holding would result in a deficiency of $845,061.82.

The windfall profit tax is an excise tax which is imposed upon crude oil removed from the premises during each

taxable period. Section 4986(a) imposes the tax upon the "windfall profit" calculated for each taxable period.[2]

"Windfall profit" is calculated under section 4988(a) and is the excess of the removal price of each barrel of crude oil over the sum of (1) the adjusted base price of such barrel, and (2) the amount of the severance tax adjustment with respect to such barrel. After this calculation has been performed, a limitation is placed upon the amount subject to the tax; i.e., the windfall profit on each barrel of crude oil shall not exceed 90 percent of the "net income" attributable to such barrel. Sec. 4988(b)(1). The "net income" for each such barrel is calculated under section 4988(b)(2), which provides:

(2) DETERMINATION OF NET INCOME.—For purposes of paragraph (1), the net income attributable to a barrel shall be determined by dividing—
    (A) the taxable income from the property for the taxable year attributable to taxable crude oil, by
    (B) the number of barrels of taxable crude oil from such property taken into account for such taxable year.

The dispute which we must resolve is the correct calculation of "taxable income from the property." That calculation is specifically provided for in section 4988(b)(3) as follows:

(3) TAXABLE INCOME FROM THE PROPERTY.—For purposes of paragraph (2)—
    (A) IN GENERAL.— Except as otherwise provided in this paragraph, the taxable income from the property shall be determined under section 613(a).
    (B) CERTAIN DEDUCTIONS NOT ALLOWED.—No deduction shall be allowed for—
        (i) depletion,
        (ii) the tax imposed by section 4986,
        (iii) section 263(c) costs, or
        (iv) qualified tertiary injectant expenses to which an election under subparagraph (E) applies.
    (C) TAXABLE INCOME REDUCED BY COST DEPLETION.—Taxable income shall be reduced by the cost depletion which would have been allowable for the taxable year with respect to the property if—
        (i) all—
        (I) section 263(c) costs, and

---

[2]See generally *Shell Oil Co. v. Commissioner*, 89 T.C. 371 (1987); *Page v. Commissioner*, 86 T.C. 1 (1986).

(II) qualified tertiary injectant expenses to which an election under subparagraph (E) applies,
incurred by the taxpayer had been capitalized and taken into account in computing cost depletion, and
(ii) cost depletion had been used by the taxpayer with respect to such property for all taxable periods.

The calculation of taxable income from the property for purposes of the NIL commences from the use of that same term as it is used in section 613(a). Section 613(a) is an income tax provision, which provides the general rule to be applied in calculating percentage depletion for all minerals that are subject to an allowance for percentage depletion upon their extraction.

After calculating taxable income from the property under section 613(a), certain deductions are eliminated under the specific terms of section 4988(b)(3)(B) above, i.e., depletion, the windfall profit tax (imposed by section 4986), intangible drilling and development costs which the taxpayer has elected to expense rather than capitalize under section 263(c), and qualified tertiary injectant expenses to which an appropriate election has been made.

At this point the calculation of taxable income from the property reposes without any allowance for depletion. Section 4988(b)(3)(C), set out above, constructs an allowance for cost depletion which we shall refer to as the "as if" cost depletion because, by its terms, it consists of the cost depletion which the taxpayer would have been allowed if the taxpayer had used cost depletion for all taxable years and if all intangible drilling and development costs and all qualified tertiary injectant expenses (covered by the appropriate election) had been capitalized by the taxpayer and taken into account in calculating its allowance for cost depletion.

Cost depletion which is allowable for income tax purposes is a deduction of long standing which has been explained and interpreted many times by regulation and case law. It is allowable for income tax purposes under section 611 and the basis for cost depletion for income tax purposes is covered by section 612. In providing for the "as if" cost depletion in section 4988(b)(3)(C) above, the intangible drilling and development costs are treated as if the taxpayer elected to capitalize them instead of electing to expense them. This treatment provides consistency with the

provision that eliminates the intangible drilling and development costs from the computation of taxable income from the property as explained above. Section 4988(b)(3)(C) likewise provides for consistent treatment of qualified tertiary injectant expenses by considering them as capitalized for the "as if" cost depletion.

To state the issue more precisely, we must decide the correct treatment to be accorded under the calculations just described for lease bonuses which petitioner paid with respect to the eight Government oil and gas leases. Petitioner eliminated them in calculating taxable income from the property and capitalized them as part of the cost basis of the property upon which it calculated the "as if" cost depletion. Respondent characterizes this as an improper "double tax benefit" and asks the Court to eliminate the lease bonuses either from the "exclusion" from taxable income from the property or from the cost basis used in calculating the "as if" cost depletion.

### Exclusion of Lease Bonuses

We will first examine the treatment of lease bonuses in calculating taxable income from the property. This involves section 4988(b)(3)(A) set forth above wherein Congress specifically provided the starting point whereby taxable income from the property should be determined under section 613(a). The pertinent portion of section 613(a) provides as follows:

SEC. 613. PERCENTAGE DEPLETION.

   (a) GENERAL RULE.—In the case of the mines, wells, and other natural deposits listed in subsection (b), the allowance for depletion under section 611 shall be the percentage, specified in subsection (b), of the gross income from the property excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion).  * * *

The term "taxable income from the property" is used in section 613(a) to state the limitation on the deduction for percentage depletion. The allowance for percentage depletion shall not exceed 50 percent of the taxpayer's *taxable income from the property* (computed without allowance for deple-

tion). As in all computations of "taxable income," however, the starting point must be gross income. Section 613(a) recites allowance of depletion to be the applicable percentage of the gross income from the property, excluding rents or royalties paid or incurred by the taxpayer. The limitation of the allowance to 50 percent of taxable income from the property is meaningless without reference to the concept of gross income from the property.

Section 613(a) does not otherwise define taxable income from the property. Nor does section 613(a) refer in any way to lease bonuses. The regulations do, however, specifically deal with lease bonuses in section 1.613-2(c)(5)(ii), Income Tax Regs., the pertinent portions of which provide as follows:

(ii) If bonus payments have been paid in respect of the property in any taxable year or any prior taxable years, *there shall be excluded in determining "gross income from the property", an amount equal to that part of such payments which is allocable to the product sold* (or otherwise giving rise to gross income) *for the taxable year.* * * * [Emphasis supplied.]

The regulations provide an example of a hypothetical taxpayer/lessor which seems closely analogous to petitioner's situation. In the example, the regulations advise the taxpayer to "exclude * * * the portion of the bonus allocable to the oil produced and sold during the year." Sec. 1.613-2(c)(5)(ii), Example 1, Income Tax Regs.

Section 1.613-2(c)(5)(ii), Income Tax Regs., requires a taxpayer to allocate such lease bonuses between taxable periods and "equally * * * to all mineral from the mineral property burdened thereby." Petitioner accomplished this by first multiplying the total lease bonuses paid for each property by a fraction, the numerator of which was the total oil and gas produced from the property for the taxable period and the denominator of which was the total estimated oil and gas reserves underlying such property. Petitioner further apportioned the amount of the lease bonus between the bonus paid for oil extraction and the bonus paid for gas production from each property during the taxable period in question. The accuracy of this calculation is not challenged by respondent.

### "As If" Cost Depletion

The next step in calculating the NIL is to reduce the "taxable income from the property" by an amount "as if" cost depletion had been used and intangible drilling and development costs and certain qualified tertiary injectant expenses had been capitalized. Sec. 4988(b)(3)(C).

It is important to point out that this provision is very broad in that it assumes that the taxpayer used cost depletion for all taxable years with respect to the property.

Section 1.612-3(a)(1), Income Tax Regs., provides that a lease bonus should be included in the cost of the mineral property and treated as part of the depletable basis of that property. Section 1.612-3(a)(3), Income Tax Regs., provides further that "In the case of the payor, payment of the bonus constitutes a capital investment made for the acquisition of an economic interest in a mineral deposit * * * recoverable through the depletion allowance." This regulation is a codification of well-recognized and long-standing accounting principles which characterize lease bonuses as capital outlays which are, therefore, capitalized. *Murphy Oil Corp. v. United States*, 337 F.2d 677, 678 (8th Cir. 1964), cert. denied 380 U.S. 979 (1965) (lease bonuses were capital investments and must be included in the depletable basis by the payor); *Quintana Petroleum Co. v. Commissioner*, 143 F.2d 588, 591 (5th Cir. 1944) (payments to acquire mineral interest in land constitute capital investment); H. Brock, J. Klingstedt, and D. Jones, Petroleum Accounting: Principles, Procedures and Issues 123 (1985); R. Westin, Taxation of Natural Resources: Oil, Gas, Minerals, and Timber 117 (1987) (payor treats the bonus as a capital investment to be recovered by cost depletion, citing sec. 1.612-3(a)(1), Income Tax Regs.); Arthur Young's Oil & Gas, Federal Income Taxation, par. 18-2, p. 267 (J. Houghton 24th ed. 1986).

Again, the issue in this case is not whether petitioner is entitled to exclude lease bonuses from section 4988(b)(3)(A) and is not whether petitioner is entitled to include the lease bonuses in its cost basis for applying the "as if" cost depletion under section 4988(b)(3)(C), but rather, the issue is whether petitioner is entitled to use the lease bonuses in both calculations. Respondent asks us to deny petitioner its treatment of lease bonuses as an improper double benefit

under the authority of *Charles Ilfeld Co. v. Hernandez*, 292 U.S. 62 (1934), and *United States v. Skelly Oil Co.*, 394 U.S. 678 (1969).

In *Ilfeld*, the taxpayer claimed losses upon liquidating two subsidiaries in 1929, even though in prior years, on consolidated returns, Ilfeld had deducted losses of the two subsidiaries that were greater than its investment in them. In those years, the consolidated return regulations did not require a member of an affiliated group to reduce its basis for stock of a subsidiary by losses it availed itself of in a consolidated return. Nevertheless, the Supreme Court disallowed the claimed investment loss, holding that the:

allowance claimed would permit petitioner twice to use the subsidiaries' losses for the reduction of its taxable income. By means of the consolidated returns in earlier years it was enabled to deduct them. And now it claims for 1929 deductions for diminution of assets resulting from the same losses. If allowed, this would be the practical equivalent of a double deduction. * * * [*Charles Ilfeld Co. v. Hernandez, supra* at 68.]

In addition, the Court held: "*In the absence of a provision in the* Act *or regulations that fairly may be read to authorize it, the deduction claimed is not allowable.*" *Charles Ilfeld Co. v. Hernandez, supra* at 66 (emphasis supplied), citing *Brown v. Helvering*, 291 U.S. 193 (1934); *Burnet v. Houston*, 283 U.S. 223, 227 (1931).

Although the taxpayer in *Ilfeld* contended that certain Code sections allowed its deductions, the Court disagreed. The Court found that two sections had direct bearing, namely then-article 37(a) forbidding recognition of losses upon distribution during the consolidated return period, and then-article 40(a) prohibiting the deduction as bad debts of obligations which are the result of intercompany transactions. *Charles Ilfeld Co. v. Hernandez, supra* at 67. Thus, although other sections of the Code permitted the deduction of investment losses, there were clear provisions to prohibit the taxpayer's treatment of intercompany transactions.

In the instant case there are specific provisions allowing petitioner's treatment of lease bonuses. *Charles Ilfeld Co. v. Hernandez, supra,* is therefore distinguishable. *Woods Investment Co. v. Commissioner*, 85 T.C. 274 (1985). Moreover, *Ilfeld* involved double deductions. The instant case does not. We have strictly construed the word "deduction"

in holding that a double benefit was allowable because it was not prohibited by section 642(g) which disallows double deductions. *Estate of Bray v. Commissioner,* 46 T.C. 577 (1966), affd. 396 F.2d 452 (6th Cir. 1968). We held in *Estate of Bray* that selling expenses were an offset to the selling price, not a deduction. This holding permitted allowance of selling expenses as a cost of administration for estate tax purposes and as an offset to the selling price for income tax purposes. We reiterated the distinction between offsets to the selling price and deductions in a like context in *Estate of Dorn v. Commissioner,* 54 T.C. 1651 (1970).

*United States v. Skelly Oil Co., supra,* involved a taxpayer who was a producer of natural gas that received income based upon rate charges set by a State commission. The taxpayer included the sales in its income in the years of the receipt, deducting 27.5 percent of the receipts as percentage depletion. The charges were later held invalid. For the year in which the invalid charges were refunded, Skelly claimed a 100-percent deduction pursuant to section 1341 for income prepaid under claim of right. The Supreme Court held that the deduction under section 1341 had to be reduced by the amount of the percentage depletion deductions allowed in prior taxable periods, stating:

The Code should not be interpreted to allow respondent [taxpayer] "the practical equivalent of double deduction," absent a clear declaration of intent by Congress. Accordingly, to avoid that result in this case, the deduction allowable in the year of repayment must be reduced by the percentage depletion allowance which respondent [taxpayer] claimed and the Commissioner allowed in the years of receipt * * * [*United States v. Skelly Oil Co., supra* at 684; citations omitted.]

The Court would not permit the taxpayer to use the same amount to reduce its taxable income in two separate years.

We hold that *United States v. Skelly Oil Co., supra,* does not apply here because Congress, by incorporating section 613(a) by reference, likewise incorporated by reference all of the concepts of cost depletion without exception. Moreover, the provisions in the instant case do not result in deductions but merely provide for the computation of a limitation on the amount of the tax applicable to only some of the taxpayers liable for windfall profit tax. Here, the treatment occurs in a single taxable year by reason of the manner in

which Congress constructed the NIL and the manner in which the Secretary has written his regulations.

Respondent argues that lease bonuses are not excludable under section 4988(b)(3)(A) because Congress incorporated section 613(a) only for the purpose of adopting general rules for the definition of income from the property. This "gloss" placed upon section 4988(b)(3)(A) by respondent is not warranted because it is not supported by the clear provisions of the Code. He argues further that only the adjustments to net income from the property specified in section 4988(b)(3)(B) are proper. Such a construction is contrary to section 1.613-2(c)(5)(ii), Income Tax Regs., quoted above, which clearly excludes lease bonuses from gross income from the property.

We conclude that the controversy in the instant case is controlled by our holding in *Woods Investment Co. v. Commissioner, supra.* That unanimous Court-reviewed opinion involved a double benefit contained in the consolidated return regulations. The situation which confronts us in the instant case is remarkably similar to the situation in *Woods Investment.*

In that case the Commissioner sought to require the taxpayer to reduce its cost basis of stock in its subsidiaries upon sale of the stock for the excess of accelerated depreciation over straight line depreciation. The subsidiaries had claimed accelerated depreciation. The consolidated return regulations prescribed by the Secretary did not require such a reduction. We pointed out that Congress gave the Secretary of the Treasury broad authority to prescribe regulations with respect to the making of consolidated returns. There, as here, the Commissioner relied upon *Charles Ilfeld Co. v. Hernandez, supra,* to argue that the taxpayer was receiving an improper double deduction.

We analyzed the actions of the Secretary in fulfilling his responsibility to promulgate consolidated return regulations under section 1502. After the regulations were adopted the law was changed but the regulations remained unchanged, even though the Commissioner changed his position to the position he took in the Tax Court proceeding. In light of the Secretary's lack of action with respect to the regulations, we said the following:

Based upon the foregoing, we conclude that petitioner reached the result mandated by respondent's consolidated return regulations and section 312(k) in computing its basis in the subsidiaries' stock. We believe that judicial interference sought by respondent is not warranted to alter this result. This Court will apply these regulations and the statute as written. If we were to make a judicial exception with respect to the adjustment for depreciation, we would be opening our doors for respondent every time he was dissatisfied with a certain earnings and profits adjustment.

If respondent believes that his regulations and section 312(k) together cause petitioner to receive a "double deduction," then respondent should use his broad power to amend his regulations. See *Henry C. Beck Builders, Inc. v. Commissioner*, 41 T.C. 616, 628 (1964). Since respondent has not taken steps to amend his regulations, we believe his apparent reluctance to use his broad power in this area does not justify judicial interference in what is essentially a legislative and administrative matter. *Henry C. Beck Builders, Inc. v. Commissioner, supra* (Drennen, J., concurring at page 633).

[*Woods Investment Co. v. Commissioner, supra* at 281-282.]

We went on to distinguish *Charles Ilfeld Co. v. Hernandez, supra,* because there were no regulations to support the taxpayer in that case but the regulations supported taxpayer Woods Investment Co. *Woods Investment Co. v. Commissioner, supra* at 282-283.

Lastly, we held that section 1.1016-6(a), Income Tax Regs., which is general in nature, did not override the specific consolidated return regulations. The actions of the Commissioner in the instant situation are not substantially different than his actions which we analyzed in *Woods Investment Co. v. Commissioner, supra.*

The thrust of the portion of *Woods Investment* quoted above is that when the Secretary is delegated authority to promulgate legislative regulations and does not do so, we will not interfere if the regulations as written support the taxpayer's position. Congress delegated to the Secretary of Treasury the authority to promulgate regulations for calculating both the NIL and cost depletion. Sec. 4997; sec. 611(a).

The regulations which provide for excluding lease bonuses from gross income from the property are discussed above under the heading "Exclusion of Lease Bonuses." Section 1.613-2(c)(5)(ii), Income Tax Regs., was adopted on February 26, 1973. T.D. 7261, 1973-1 C.B. 309, 317. It has not been changed since adoption.

The regulations which provide for capitalizing lease bonuses for cost depletion purposes are discussed above under the heading " 'As If' Cost Depletion." Section 1.612-3(a)(1), (3), Income Tax Regs., was adopted on January 20, 1960 (T.D. 6446, 1960-1 C.B. 208, 226). It has not been changed since adoption.

The windfall profit tax was enacted in 1980. The calculation of the NIL was included in regulations adopted on October 26, 1981. T.D. 7790, 1981-2 C.B. 220. The pertinent portions of those regulations, section 51.4988-2, Excise Tax Regs., are as follows:

(b) *Calculation of net income limitation*—(1) *In general.* Except to the extent provided otherwise in paragraph (c) of this section, the net income limitation with respect to a barrel shall be computed in the following manner.

(i) Determine the taxpayer's gross income from the property (from which the barrel was produced) that is attributable to taxable crude oil for the taxable year. Where the taxpayer has several depletable properties under section 614 of the Code in a single property as defined by the energy regulations, the taxpayer must compute the gross income (and net income limitation) separately for each depletable property.

(ii) Determine the taxpayer's taxable income from the property attributable to taxable crude oil for the taxable year by reducing the taxpayer's gross income from the property determined under paragraph (b)(1)(i) of this section by all allowable deductions attributable to the production of taxable crude oil that would be subtracted in determining taxable income from the property under section 613(a) (except windfall profit tax, section 263(c) costs, and qualified tertiary injectant expenses to which an election under section 4988(b)(3)(E) applies) and by the cost depletion deduction (described in paragraph (b)(3) of this section) allowable for the taxable year.

\*      \*      \*      \*      \*      \*      \*

(3) *Taxable income from the property reduced by cost depletion.* (i) Taxable income from the property shall be reduced by the cost depletion deduction that would have been allowable to the taxpayer for the taxable year with respect to the property if for all taxable years—

(A) All—

(*1*) Section 263(c) costs, and

(*2*) Qualified tertiary injectant expenses to which an election under section 4988(b)(3)(E) applies,

incurred by the taxpayer had been capitalized and taken into account in computing cost depletion, and

(B) Cost depletion had been used by the taxpayer with respect to the property.

(ii) The cost depletion deduction that would be allowable for the taxable year is computed by first determining the depletable basis of the property as of the date of its acquisition by the taxpayer. With regard to transfers of properties before 1979, the taxpayer's original basis in the property is determined under section 1012. The basis of proven oil and gas properties transferred after 1978 is determined under paragraph (c) of this section. Adjustments to basis are then made for expenditures properly chargeable to capital account and depletable under section 612, section 263(c) costs, and qualified tertiary injectant expenses (to which an election under section 4988(b)(3)(E) applies) incurred during the year.
* * *

The applicable sections of the regulations just quoted have not been amended since their adoption. As is readily apparent, the regulations do not mention lease bonuses. They incorporate by reference the calculation of taxable income from the property under section 613(a) and refer to cost depletion being used by the taxpayer with respect to the property.

On June 22, 1982, the National Office of the Internal Revenue Service issued a Technical Advice Memorandum which held that the taxpayer was entitled to the treatment accorded lease bonuses under the statute and regulations. Technical Advice Memorandum 8412004 (June 22, 1982). We recognize that technical advice memoranda are not precedent but they "do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws" and may provide "evidence" that such construction "is compelled by the language of the statute." *Hanover Bank v. Commissioner,* 369 U.S. 672, 686-687 (1962).

Obviously, the Commissioner has changed his mind and now contends that the treatment accorded lease bonuses is not permitted. We recognize that the Commissioner can change his mind. Nevertheless, the regulations have not been changed to reflect his present position.

Section 1.1016-6(a), Income Tax Regs., provides as follows:

(a) Adjustments must always be made to eliminate double deductions or their equivalent. Thus, in the case of the stock of a subsidiary company, the basis thereof must be properly adjusted for the amount of the subsidiary company's losses for the years in which consolidated returns were made.

The authority granted to the Secretary to prescribe regulations in windfall profit tax and section 1.1016-6(a), Income Tax Regs., authorized the Secretary to amend the regulations to provide that the double benefit to be accorded lease bonuses was not permitted. The Secretary has not done so. He did, however, amend the regulations with respect to the calculation of the net income limitation on two occasions. T.D. 8076, 1986-1 C.B. 336; T.D. 8185, 1988-1 C.B. 381.

After some 8 years of failing to amend the regulations to disallow the treatment accorded lease bonuses the Commissioner now comes to this Court and asks us to do so. Even so, he is ambivalent as to the remedy he recommends. His primary argument is that lease bonuses should not be excluded from the taxable income from the property and then as an alternative argument he contends that lease bonuses should not be capitalized as costs in computing the "as if" cost depletion. We reiterate that this is the same situation which confronted the Court in *Woods Investment Co. v. Commissioner, supra,* and we see no distinction here that should cause us to depart from the holding of that case. To quote again from *Woods Investment Co. v. Commissioner, supra* at 282, "Since respondent has not taken steps to amend his regulations, we believe his apparent reluctance to use his broad power in this area does not justify judicial interference in what is essentially a legislative and administrative matter."

Based upon our analysis of the regulations, both under the windfall profit tax law and the income tax law, we conclude that lease bonuses are properly excludable from taxable income from the property and are properly included in the cost basis for cost depletion. In order to hold that petitioner was not entitled to this treatment we would have to flip a coin to disallow the benefit in either computation. We cannot provide a logical basis to favor one treatment of lease bonuses over the other. The parties stipulated to the amounts of the deficiency if we deny the exclusion of lease bonuses in calculating taxable income from the property and the amount of the deficiency if the lease bonuses are not capitalized for the "as if" cost depletion. The difference

in the deficiencies is $55,493.85. We cannot, therefore, merely hold that petitioner cannot receive a double benefit.

Respondent's arguments to support treatment of lease bonuses contrary to the plain meaning of the regulations are unconvincing. Respondent is, in effect, asking us to hold the regulations invalid. If the regulations did not reflect the intent of Congress, the Secretary had a duty to amend the regulations instead of referring this problem to this Court. We decline to flip the coin under these circumstances.

Accordingly, we uphold the NIL regulations permitting the exclusion of an allocable portion of the lease bonuses from the definition of taxable income from the property in section 4988(b)(3)(A) and permitting the aggregate lease bonuses to be included as a capital payment in the basis attributable to "as if" cost depletion in section 4988(b)(3)(C). We, therefore, find that petitioner correctly computed the amount of the NIL for purposes of the windfall profit tax liability in its taxable year 1980. To reflect the foregoing,

*Decision will be entered for the petitioner.*