CHARLES F. ALEXANDER AND YVETTE M. ALEXANDER, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 15015-86, 18367-86,    Filed October 25, 1990.
18488-86, 20205-86,
20291-86, 20341-86,
20342-86, 20387-86,
20388-86, 20389-86,
20403-86, 20404-86,
20405-86, 20450-86,
20457-86, 20476-86,
20478-86, 20497-86,
20498-86, 20852-86,
20875-86, 20915-86,
20944-86, 20945-86,
20946-86, 20947-86,
21018-86, 21084-86,
21085-86, 21097-86,
21099-86, 21100-86,
21101-86, 21102-86,
21382-86, 21434-86,
21473-86, 21483-86.

---

[1]The cases consolidated herewith are set forth in the appendix.

*Robert R. Rubin* and *Kimberly Mitchell-Bott,* for the petitioner Kathryn Molakides in docket No. 18367-86.

*Harve M. Lewis* and *Joanne L. Rood,* for the respondent.

### SUPPLEMENTAL OPINION

PARR, *Judge:* This matter is before the Court on respondent's motion for reconsideration filed April 18, 1990. Petitioner Kathryn Molakides in docket No. 18367-86 filed notice of no objection to respondent's motion. No other petitioner has filed a response to respondent's motion.

Respondent asks us—against his own interest—to find that the at-risk rules of section 465[2] do not apply to the activity of the partnerships in question, *if* we determine it was a "new activity" under section 465(c)(3)(A). This is because, for 12 years, respondent has failed to promulgate the regulations required to make that section viable. See sec. 465(c)(3)(E).[3] See also *Transco Exploration Co. v. Commissioner,* 95 T.C. 373 (1990); *Idaho First National Bank and its Subsidiary v. Commissioner,* 95 T.C. 185 (1990); *Krause v. Commissioner,* 92 T.C. 1003, 1025-1026 (1989); *Honeywell, Inc. v. Commissioner,* 87 T.C. 624 (1986).

On March 19, 1990, the Court filed its Memorandum Findings of Fact and Opinion in this case, which was reported at T.C. Memo. 1990-141. The case presented issues related to five limited partnerships involved in computer software development: Blueprint Software (BS), Blueprint Software Professional (BSP), Quoin Software (Quoin), Matrix Business Computers (Matrix), and Computech Research Investors, Ltd. (CRI). The year in issue for BS, BSP, Quoin, and Matrix was 1982, and the year in issue for CRI was 1980. All petitioners were limited partners in one or more of the partnerships.

The third issue we considered was whether the payees of promissory notes made by each of the limited partnerships

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.

[3]Sec. 465(c)(3)(E) was redesignated as sec. 465(c)(3)(D) by sec. 503(a), Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2243. All references made hereinafter are to the redesignated section.

(except for CRI) held interests in the activities being financed, other than interests as creditors, within the meaning of section 465(b)(3)(A). Citing *Jackson v. Commissioner*, 86 T.C. 492 (1986), affd. on other issues 864 F.2d 1521 (10th Cir. 1989), and its progeny, we held that they did. Accordingly, those petitioners who were limited partners were not at risk with respect to the portion of the bases of their partnership interests attributable to the notes. To the extent petitioners were not at risk, their distributive shares of partnership losses were not deductible.

It is the policy of this Court to try all the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation. The granting of a motion for reconsideration rests within the discretion of the Court, and will not be granted unless unusual circumstances or substantial error is shown. *Vaughn v. Commissioner*, 87 T.C. 164, 166-167 (1986).

Respondent's motion questions whether section 465(b)(3)(A) applies to the software development activities of the limited partnerships. Respondent freely admits that neither party focused on this issue until now. Nevertheless, our previous holding that petitioners were not at risk was based upon the premise that section 465(b)(3)(A) applied to the software development activities of the partnerships. Accordingly, it is imperative that we address this issue.

Section 465 was enacted as part of the Tax Reform Act of 1976 (TRA 76). Sec. 204, Pub. L. 94-455, 90 Stat. 1520, 1531. In general, any loss from an activity governed by section 465 is allowed only to the extent of the aggregate amount that a taxpayer is at risk for such activity at the close of the taxable year. Sec. 465(a). Section 465(b)(3)(A) provided that amounts borrowed for use in an activity are not considered to be at risk if such amounts are borrowed from any person who "has an interest (other than an interest as a creditor) in such activity." As originally enacted, the at-risk rules applied only to taxpayers engaged in any of four listed activities ("old activities"), including leasing any section 1245 property (as defined in section 1245(a)(3)). Sec. 465(c)(1).[4]

---

[4]SEC. 465. DEDUCTIONS LIMITED TO AMOUNT AT RISK.

(c) ACTIVITIES TO WHICH SECTION APPLIES.—

*Is the activity in question an "old activity"?*

In his motion for reconsideration respondent, for the first time, suggests that the limited partnerships were engaged in the leasing of section 1245 property, within the meaning of section 465(c)(1)(C). If respondent is correct, then the at-risk limitation of section 465(b)(3)(A) applies, and petitioners would not be allowed to deduct the portion of the bases of their partnership interests attributable to the notes.

Respondent's entire argument on this point is as follows:

> If the Court concludes that the petitioners were engaged in the leasing of section 1245 property, which is an old activity under section 465(c)(1)(C), then section 465(b)(3) is applicable to the petitioners' activities.

No reasoning or citations to the record or to law are offered to assist the Court in reaching such a conclusion. We conclude the activity in question is not an old activity.

The at-risk rules of section 465 are to be applied to the relevant facts of a transaction as they exist at the end of each taxable year. *Krause v. Commissioner*, 92 T.C. 1003, 1025 (1989).

The term "section 1245 property" is defined in section 1245(a)(3) as including personal property "which is or has been property of a character subject to the allowance for depreciation provided in section 167." The term "personal property" is defined in the regulations as including both tangible and intangible personal property. Sec. 1.1245-3(b), Income Tax Regs.

Computer software is intangible personal property. *Ronnen v. Commissioner*, 90 T.C. 74, 100 (1988). Since computer software is intangible personal property it is depreciable if at all under section 167 (not ACRS or MACRS). See sec. 168.

---

(1) TYPES OF ACTIVITIES.—This section applies to any taxpayer engaged in the activity of—
    (A) holding, producing, or distributing motion picture films or video tapes,
    (B) farming (as defined in section 464(e)),
    (C) leasing any section 1245 property (as defined in section 1245(a)(3),
    (D) exploring for, or exploiting, oil and gas resources, or
    (E) exploring for, or exploiting, geothermal deposits (as defined in section 613(e)(3))

as a trade or business or for the production of income.

[Sec. 465(c)(1)(E) was added by sec. 402(d), Energy Tax Act of 1978, Pub. L. 95-618, 92 Stat. 3174, 3202-3203, and is generally effective for wells commenced on or after Oct. 1, 1978, in taxable years ending on or after such date. Sec. 402(e)(1), Energy Tax Act of 1978, *supra.*]

Section 167(a) provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, including obsolescence, of property used in a trade or business. "The term 'property' includes intangibles." *Computing & Software, Inc. v. Commissioner,* 64 T.C. 223, 231-232 (1975). Section 1.167(a)-3, Income Tax Regs., sets forth the ground rules for the allowance of the depreciation deduction for intangibles, as follows:

Sec. 1.167(a)-3 Intangibles.

If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life. No deduction for depreciation is allowable with respect to goodwill. * * *

We hold that, in the present case, the computer software was not "property of a character subject to the allowance for depreciation provided in section 167" for two reasons. First, during the years in issue, which were startup years, the software had not yet been developed. There was only a contract to develop such software. There was, in fact, not yet any "property" capable of being depreciated. And, secondly, there is no evidence in the record from which we can estimate a useful life with reasonable accuracy, as required by the regulations.

Accordingly, we hold that the software was not section 1245 property.[5] As a result, the limited partnerships were not engaged in the activity of leasing section 1245 property, under section 465(c)(1)(C).

## Do the at-risk limitations apply to "new activities"?

Respondent alternatively argues that if the limited partnerships were not engaged in the activity of leasing section 1245 property, then section 465(b)(3)(A) does not apply to this case. Respondent makes this argument even though it is adverse to his interest in this case. If respondent is

[5]Because we conclude that the software was not sec. 1245 property, we need not consider whether the limited partnerships were engaged in a leasing activity.

correct, then our previous holding that the at-risk rules applied to limit deductions by those petitioners who were limited partners was erroneous.

Section 465(c)(3) was enacted as part of the Revenue Act of 1978 (RA 78), Pub. L. 95-600, sec. 201, 92 Stat. 2763, 2814, and provides in pertinent part:

(3) EXTENSION TO OTHER ACTIVITIES.—

(A) IN GENERAL.—In the case of taxable years beginning after December 31, 1978, this section also applies to each activity—

(i) engaged in by the taxpayer in carrying on a trade or business or for the production of income, and

(ii) which is not described in paragraph (1).

\* \* \* \* \* \* \*

(D) APPLICATION OF SUBSECTION (B)(3).—In the case of an activity described in subparagraph (A), subsection (b)(3) shall apply only to the extent provided in regulations prescribed by the Secretary.

The Secretary has not yet published final regulations concerning the application of section 465(b)(3) to the new activities listed in section 465(c)(3)(A).[6]

Respondent explains his argument in his motion for reconsideration as follows:

In *Jackson v. Commissioner*, 86 T.C. 492 (1986), *aff'd*, 864 F.2d 1521 (10th Cir. 1989), the Court recognized at 86 T.C. 528 n. 25 that the Secretary was directed by Congress to prepare regulations applying section 465(b)(3) to the new activities [of section 465(c)(3)(A)]. Although the final regulations had not been issued, the Court applied section 465(b)(3) and found that the taxpayers in *Jackson* were not at risk for purposes of section 465. On appeal, the government was sustained on other grounds and the section 465 issues were not reached. Moreover, under Rev. Rul. 77-397, 1977-2 C.B. 198, the respondent believed that the taxpayers in *Jackson* were engaged in an old activity [of section 465(c)(1)].

\* \* \* \* \* \* \*

Notwithstanding the apparent application of section 465(b)(3) to a new activity by the Court in *Jackson*, the respondent believes that if the petitioners herein were engaged in a new activity under section 465(c)(1)[sic](A) for the years in question, then the limitations imposed by section 465(b)(3) are not applicable with respect to the petitioners'

---

[6]The Treasury has proposed regulations explaining when a lender will be deemed to have an interest in an activity, other than that of a creditor. Sec. 1.465-8, Proposed Income Tax Regs., 44 Fed. Reg. 32238 (June 5, 1979). The proposed regulations mention sec. 465(c)(3), but do not address the application of sec. 465(b)(3) to the new activities listed in sec. 465(c)(3)(A). See sec. 1.465-1(c), Proposed Income Tax Regs.

investments in BSP, Matrix, BS, and Quoin, and the respondent requests that the Court revise its opinion to reflect the application of section 465(c)(3)(D).

We agree with respondent.

The partnerships were not engaged in an activity listed in section 465(c)(1). The parties agreed at trial that petitioners invested in the partnerships with the objective of making a profit. See sec. 183; *Dreicer v. Commissioner*, 78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). We take this to mean that the parties also agree that the activities of the partnerships fall within the ambit of section 465(c)(3)(A).

Section 465(c)(3)(D) unambiguously provides that section 465(b)(3) "shall apply only to the extent provided in regulations prescribed by the Secretary," to an activity described in section 465(c)(3)(A). Regulations have not been prescribed by the Secretary. Accordingly, we hold that section 465(b)(3) does not apply to the activities of the limited partnerships.[7]

Respondent argues that under Rev. Rul. 77-397, 1977-2 C.B. 178, he believed that the taxpayers in *Jackson v. Commissioner*, 86 T.C. 492 (1986), affd. 864 F.2d 1521 (10th Cir. 1989), were engaged in an activity listed in section 465(c)(1). This may have been respondent's belief, but our opinion in *Jackson* makes no reference to that revenue ruling or its reasoning. The Court clearly applied section 465(b)(3) to an activity encompassed by section 465(c)(3)(A). See *Jackson v. Commissioner*, 86 T.C. at 526-529.[8] Accordingly, we will no longer follow the portion of *Jackson* that stands for the proposition that section 465(b)(3) may be

---

[7]The legislative history to the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, supports our interpretation of sec. 465(c)(3)(D). After discussing sec. 465(b)(3), the House Committee Report states:

Although this rule will continue to apply without change to the four specified activities, the bill provides that, in the case of the activities which are newly made subject to the at risk provision by the bill, this automatic nonrecourse provision shall apply only to the extent provided in regulations prescribed by the Treasury. The regulations may make this provision applicable to activities involving tax shelter characteristics, such as the presence of property the value of which is subject to substantial uncertainty, activities of a speculative nature, the unavailability of similar financing on similar terms from unrelated lenders and the presence of terms or conditions under which either the loan becomes nonrecourse in later taxable years or the taxpayer can convert the obligation from a recourse obligation to a nonrecourse (or guaranteed) obligation in later years. [H. Rept. 95-1445, at 71 (1978), 1978-3 C.B. 181, 245.]

[8]See also *Zane v. Commissioner*, T.C. Memo. 1988-392.

applied to an activity set forth in section 465(c)(3)(A), where regulations have not been prescribed by the Secretary as mandated by section 465(c)(3)(D).[9]

To reflect the foregoing,

*Appropriate orders will be issued.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, WELLS, RUWE, and COLVIN, *JJ.,* agree with the majority opinion.

WHALEN, *J.,* concurs in the result only.

### APPENDIX

| Docket No. | Petitioner |
| --- | --- |
| 15015-86 | Charles F. and Yvette M. Alexander |
| 20946-86 | John J. Antel, Deceased, and Adelaide C. Antel |
| 20852-86 | David W. and Kathy Arana |
| 20389-86 | John T. and Mildred E. Bennett |
| 20497-86 | Allen K. and Patti R. Brooks |
| 21473-86 | Donald R. Chiamparino |
| 21101-86 | Gary E. and Nancy DeMartini |
| 21099-86 | Eddie S. and Janice Fink |
| 21084-86 | Felix and Elinor Gatto |
| 20388-86 | Gerald J. Gleason, Jr. |
| 20457-86 | Varney and Barbara Glowner |
| 20387-86 | Imelda Hampton |
| 21097-86 | Robert M. and Alicia P. Herman |
| 21102-86 | Melvyn L. and Maureen C. Hetzel |
| 20476-86 | Jo Ann Ison |
| 20205-86 | Richard F. and Carol Johnstone |
| 20498-86 | Michael Knaak |
| 20341-86 | William H. and Joan Kirk |
| 18488-86 | Estate of Lester L. Lewis, Deceased, Steve Wechsler, Executor, and Florence Lewis |
| 20875-86 | Abe S. and Sara Rae Miller |
| 18367-86 | George and Kathryn Molakides |
| 20403-86 | Giovanni P. and Ines B. Oldini |
| 20915-86 | Martin F. and Pattianne N. Parker |

---

[9]In cases following *Jackson,* we have utilized the proposed regulations interpreting sec. 465(b)(3)(A) as a guideline in cases involving "old" activities covered by sec. 465(c)(1). See *Levy v. Commissioner,* 91 T.C. 838 (1988); *Larsen v. Commissioner,* 89 T.C. 1229 (1987), affd. in part and revd. in part sub nom. *Casebeer v. Commissioner,* 909 F.2d 1360 (9th Cir. 1990); *Bennion v. Commissioner,* 88 T.C. 684 (1987); *Waddell v. Commissioner,* 86 T.C. 848 (1986), affd. 841 F.2d 264 (9th Cir. 1988). Since sec. 465(c)(3)(D) prohibits application of *sec.* 465(b)(3) only to the "new" activities of sec. 465(c)(3)(A) until regulations are prescribed, the precedential value of these cases remains unchanged by our opinion in this case.

| | |
|---|---|
| 20944-86 | Albert and Agnes Piccetti |
| 20404-86 | John and Nicole Piccetti |
| 20947-86 | Roy L. and Barbara Quilici |
| 20478-86 | Douglas N. and Elizabeth R. Reid |
| 21434-86 | Primo R. and Naomi J. Repetto |
| 21100-86 | Salvadore J. and Linda M. Rizzo |
| 20405-86 | Anthony J. and Barbara Ann Scafine |
| 21085-86 | Harold and Dorothy Siner |
| 20450-86 | Patricia A. Steele |
| 21382-86 | David W. and Kathleen Stell |
| 20342-86 | Gregg S. and Linda D. Taylor |
| 21018-86 | Lance Thomson |
| 20945-86 | Vondina W. Thomson |
| 20291-86 | Terry L. and Laurie S. Weitzman |
| 21483-86 | Jim D. White |

SWIFT, *J.,* concurring: A further explanation may be helpful as to why the at-risk rules of section 465 do not apply to the partnerships' activities at issue in this case.

As the majority opinion explains and as respondent acknowledges in his motion for reconsideration, until respondent promulgates regulations under section 465(c)(3)(D), the at-risk rules of section 465(c) are only applicable to the specific "old activities" described in section 465(c)(1). Clearly, research and development activities are not included among those "old activities."

As I understand the facts, the underlying activities engaged in by the partnerships involved in this case during the years in issue were research and development, not the leasing of property, and the deductions at issue relate to those research and development activities, not to the leasing of property. Accordingly, as new activities with respect to which regulations have not been promulgated, the at-risk rules of section 465(c) are not applicable to the partnerships' activities, nor to the deductions claimed by the partnerships with respect to such activities.

HAMBLEN, *J.,* agrees with this concurring opinion.

HALPERN, *J.,* concurring: I concur with the result reached by the majority and, in part, with the majority's analysis. I have difficulty, however, understanding the majority's analysis of section 465(c)(1)(C). Section 465(c)(1) states that

section 465 applies only to taxpayers engaged in certain specified activities. Section 465(c)(1)(C) further provides that such activities include "the activity of * * * leasing any section 1245 property (as defined in section 1245(a)(3))." Section 1245(a)(3) defines "section 1245 property" as including personal property "which is or has been property of a character subject to the allowance for depreciation provided in section 167." I believe that the majority here mistakenly focuses on the definition of "section 1245 property." The correct focus, I believe, should be on whether, during the years in issue, the taxpayers were engaged in leasing activities.

The majority concludes that, because the computer software was not, during the years in issue, "property of a character subject to the allowance for depreciation provided in section 167," the limited partnerships could not, during the years in issue, have been "engaged in the activity of * * * leasing any section 1245 property." Sec. 1245(a)(3) and sec. 465(c)(1)(C). The majority reaches that result by focusing on the definition of "section 1245 property." The majority's conclusion suggests that a taxpayer cannot be engaged in "the activity of * * * leasing any section 1245 property" until the leased property is currently "of a character subject to the allowance for depreciation provided in section 167." Sec. 465(c)(1)(C) and sec. 1245(a)(3). Put another way, the majority's conclusion suggests that a taxpayer cannot be engaged in the activity of leasing section 1245 property until such property has been placed in service for the purposes of section 167.

I believe the majority has interpreted section 465(c)(1)(C) too narrowly. The majority's conclusion generally will exclude from limitation under section 465 losses incurred by a taxpayer in a tax year prior to the tax year during which the leased property becomes "section 1245 property" by virtue of having been placed in service. The effect of the majority's conclusion is that section 465 could not be applied to a taxpayer who deducts under section 174 research or experimental expenditures during a tax year when the leased property has yet to become property that could be depreciated under section 167. The reference in section 465(c)(1)(C) to "section 1245 property" need not be

read to exclude from the application of section 465 a taxpayer that enters into leases in a tax year prior to the tax year during which the leased property is placed in service for purposes of section 167 (i.e., becomes "section 1245 property"). Thus, section 465(c)(1)(C) need not be interpreted to preclude the conclusion that such taxpayer has, in the years during which the leases were entered into, engaged in leasing section 1245 property. The focus should be on whether the taxpayer has engaged during the relevant tax years in any leasing activities, not on whether the leased property is during the relevant tax years "section 1245 property."[1]

Since the majority's opinion contains no indication that the limited partnerships had engaged in any leasing activities during the tax years at issue, I concur with the result reached by the majority.

---

[1]With regard to whether the taxpayer has engaged in any leasing activities, the relevant legislative history provides that: "Under the at risk rule as it applies to equipment leasing, the taxpayer is considered to be in a leasing activity if he has an ownership interest, either direct or indirect, in section 1245 property (as defined in sec. 1245(a)(3)) which is leased or held for leasing." S. Rept. 94-938, at 85 (1976), 1976-3 C.B. (Vol. 3) 123. There is no reason to believe that the leasing of computer software should be treated differently.